**Adolph K. FEINBERG and Virginia B. Feinberg, His Wife, Petitioners,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 18556.**

United States Court of Appeals
Eighth Circuit.

May 2, 1967.

Before MATTHES, LAY and HEANEY, Circuit Judges.

MATTHES, Circuit Judge.

This case is before the Court on petition to review the decision of the Tax Court, sustaining the Commissioner's determination of deficiencies in Petitioners' 1957 and 1959 individual income taxes in the amount of $9,207.53 and $19,138.99, respectively. The opinion of the Tax Court is reported at 45 T.C. 635 (1966).

The underlying question for our determination concerns the application of § 1033(a) [1] of the Internal Revenue Code of 1954 to compensation received by Petitioners during the years 1957 and 1959 as the result of the condemnation of certain real property held by them.

Petitioners, Adolph K. Feinberg and Virginia B. Feinberg, hereinafter referred to collectively as taxpayer, filed joint income tax returns for the tax years 1957 and 1959. The facts, some of which have been stipulated, stand largely undisputed.

Adolph K. Feinberg, who is in the real estate business, purchased in September, 1951 a 56 acre tract of unimproved real estate adjacent to the St. Louis Municipal Airport. Title to this property, however, was placed in the name of Olive M. Gutweiler, a straw party acting on taxpayer's behalf. Taxpayer concededly acquired and held this real estate as investment property in the expectation that its underlying value would increase over the years.

Sometime prior to October, 1953 portions of taxpayer's airport property were placed under threat of condemnation by the City of St. Louis and by the State of Missouri. In May, 1954, pursuant to Missouri law, the Circuit Court of St. Louis County appointed condemnation commissioners who assessed taxpayer's damages at $101,500.00 for the taking of his property. The condemning au-

Norman Barken, St. Louis, Mo., for petitioners and Henry C. Lowenhaupt, St. Louis, Mo., on the brief.

Albert J. Beveridge, III, Atty., Tax Div., Dept. of Justice, Washington, D. C., for respondent and Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson and David O. Walter, Attys., Tax Div., Dept. of Justice, Washington, D. C., on the brief.

1. Section 1033(a), 26 U.S.C. § 1033(a) (1954), in general pertains to the nonrecognition of gain attributable to certain involuntary conversions at the taxpayer's election.

thorities accordingly paid that amount into the registry of the Circuit Court on or about December 3, 1956.

Further proceedings contesting the amount of the original condemnation award resulted in an additional $17,-500.00 being paid into the registry of the court. On July 22 and July 24, 1957, upon application, the court ordered a total of $119,000.00 paid out to taxpayer. The condemning authorities took possession during 1957 and actively began work on the property.

Shortly after July 2, 1957 taxpayer appealed his condemnation award to the Supreme Court of Missouri. As a result additional compensation was awarded in the amount of $88,500.00, which taxpayer received on October 27, 1959. On or about October 19, 1959 taxpayer executed a warranty deed which purported to transfer title to the property to the condemning authorities.

Ever since his initial awareness of the threat of condemnation in 1951 taxpayer contends that he contemplated the reinvestment of potential condemnation proceeds in other similar investment properties, and that the five properties set forth below were purchased with the intention that they be replacement properties within the meaning of § 1033(a), supra.

| DATE OF ACQUISITION | LOCATION |
|---|---|
| 1) October 15, 1953 | 120 North Broadway, St. Louis |
| 2) March 12, 1957 | 4005–07 Chouteau Ave., St. Louis |
| 3) June 15, 1959 | 5240 Labadie Ave., St. Louis |
| 4) December 28, 1959 | 1216 Olive Street, St. Louis |
| 5) June 20, 1960 | 114–16 North Broadway, St. Louis |

Each of the above properties was acquired in the name of taxpayer's straw party, Olive M. Gutweiler. As regards the Chouteau acquisition, however, Olive M. Gutweiler, shortly after its purchase, reconveyed the property to the A. K. Feinberg Real Estate Company, a corporation wholly owned by taxpayer, which purchased the property with funds advanced by taxpayer. Mrs. Gutweiler similarly acquired title to the Labadie property on June 15, 1959, and on June 17, 1959 conveyed the same by warranty deed to Real Estate Supervising Company, Inc., another corporation wholly owned by taxpayer.

▆ Petitioners did not report the $119,000.00 received from the condemnation in 1957 on their Federal income tax return for that year, or the $88,-500.00 received in 1959 on their return for 1959.[2]

On the basis of the foregoing facts the Tax Court concluded that taxpayer's alleged replacement properties were "similar or related in service or use" to the property converted within the meaning of § 1033(a), but nevertheless denied delayed recognition of the condemnation gain for the reason that one of taxpayer's five replacement properties [the Chouteau acquisition] was purchased by his controlled corporation rather than by taxpayer himself; three of the five replacement properties [the Labadie, Olive and

---

**2.** Taxpayer asserts, however, that his failure to declare these items as income constituted an election on his part to apply the nonrecognition provisions of § 1033 (a) to such income. We agree. A taxpayer need not make an affirmative election regarding the nonrecognition of gain under § 1033(a) of the 1954 Code. The regulations explicitly state that a failure to include gain on an involuntary conversion in gross income reported on a tax return will be deemed an election to have the nonrecognition provisions of § 1033 (a) apply. Treas.Reg. § 1.1033(a)–2(c) (2).

116 N. Broadway acquisitions] were purchased later than the requisite time interval specified by the statute; the fifth replacement property [120 N. Broadway] was not purchased with the requisite intent of replacing the converted property, and thus taxpayer did not elect nonrecognition.

The specific questions to be determined are: (1) Did the Tax Court err in finding that taxpayer first realized gain from the condemnation proceedings in 1957, and that therefore the time interval for purchasing replacement property in order to qualify for nonrecognition of gain under § 1033(a) expired on December 31, 1958? (2) Did the Tax Court err in holding that certain replacement property purchased by a corporation owned by taxpayer did not fulfill the requirements of § 1033(a) for nonrecognition of gain? (3) Did the Tax Court err in finding that taxpayer did not show the requisite intent in replacing the condemned property with property located at 120 North Broadway?

## I

Section 1033(a) of the Internal Revenue Code of 1954 allows a taxpayer to elect not to recognize the gain from an involuntary conversion in the year in which it is realized, if such gain is timely reinvested in other property "similar or related in service or use" to the converted property. Recognition of such gain is merely deferred until the sale of the replacement property, the basis of which must be decreased to the extent that the gain is not recognized initially.[3] Certain prerequisites must exist to defer gain under § 1033(a), one of which is that the converted property must be replaced within a certain period of time. Section 1033(a) (3) (B) specifies:

"(B) Period within which property must be replaced.—The period re-

ferred to in subparagraph (A) shall be the period beginning with * * the earliest date of the threat or imminence of requisition or condemnation of the converted property, * * and ending—

"(i) one year after the close of the first taxable year in which any part of the gain upon the conversion is realized, or

"(ii) subject to such terms and conditions as may be specified by the Secretary or his delegate, at the close of such later date as the Secretary or his delegate may designate on application by the taxpayer. Such application shall be made at such time and in such manner as the Secretary or his delegate may by regulations prescribe."

Taxpayer candidly admitted that he failed to apply for an extension of time within which to reinvest the proceeds from the condemnation under § 1033(a) (3) (B) (ii), and consequently the allowable period for purchasing replacement property must be computed by reference to the first year in which any part of the gain from the conversion was realized.

■■ Taxpayer contends that there can be no "recognizable realization" of gain from an involuntary conversion until there had been a sale or exchange of the condemned property, and no sale or exchange was consummated until the conveyance of title by deed in 1959, and that therefore gain was initially realized in 1959. Taxpayer's argument, however, proceeds on a false premise that gain cannot be "realized" until it is "recognized." The Code clearly makes a distinction between the amount of gain or loss *realized* in a transaction and the amount of gain or loss *recognized*. On a sale or exchange of property under § 1002 of the Code gain is normally

---

3. Section 1033(c) provides:

"* * * In the case of property purchased by the taxpayer in a transaction described in subsection (a) (3) which resulted in the nonrecognition of any part of the gain realized as the

result of a compulsory or involuntary conversion, the basis shall be the cost of such property decreased in the amount of the gain not so recognized; * * *"

recognized for tax purposes when realized, but there are exceptions, one of which is § 1033(a). Realization of taxable gain from the acquisition or disposition of property occurs when the last step is taken by which owner obtains fruition of the economic gain which has accrued to him. See, e. g., Helvering v. Horst, 311 U.S. 112, 115, 61 S.Ct. 144, 85 L.Ed. 75 (1940); Murray v. Commissioner of Internal Revenue, 232 F.2d 742, 746 (9th Cir. 1956), cert. denied 352 U.S. 872, 77 S.Ct. 97, 1 L.Ed.2d 77 (1956); Seligmann v. Commissioner of Internal Revenue, 207 F.2d 489, 494 (7th Cir. 1953). We agree with the Commissioner that taxpayer at the latest "realized" a gain from the condemnation on July 22 and July 24, 1957, when upon application, he withdrew $119,000.00 from the registry of the Circuit Court, a sum which greatly exceeded his basis in the property of $31,325.01. Taxpayer at this time was unqualifiedly entitled to the condemnation proceeds which he received, and did not merely have a defeasible interest in them. Cf. Nitterhouse v. United States, 207 F.2d 618, 619–620 (3rd Cir. 1953), cert. denied, 347 U.S. 943, 74 S.Ct. 638, 98 L.Ed. 1091 (1954). Section 1001 of the Internal Revenue Code of 1954 similarly defines "gain realized" in terms of money and/or property received from the sale or disposition of property, which is in excess of the taxpayer's adjusted basis in the property sold or disposed. It would strain logic, we believe, to hold that taxpayer did not realize a gain on his property in 1957, when he received without restriction $119,000.00 in condemnation proceeds. Since gain was realized in 1957, the applicable replacement period terminated on December 31, 1958. The fact that additional compensation in the amount of $88,500.00 was received in 1959 does not alter the year of realization, since § 1033(a) defines the replacement period by reference to the "first taxable year in which *any part* of the gain upon the conversion is realized." Section 1033(a) (3) (B) (i) (Emphasis added). Section 1033(a)

(3) (B) (ii) permits an extension of time for those taxpayers who do not receive the full proceeds in any one year or who are unable to find appropriate replacement property within the specified period. Having failed to apply for such extension, however, taxpayer will not be allowed to bring his untimely acquisitions within the confines of the statute.

■■ Taxpayer also runs astray in his argument that title to the condemned property did not pass until execution of the warranty deed in 1959. Under Missouri law, which controls here, it is clear that the condemnor fully acquires title to the property by operation of law when it pays to the owner, or into the registry of the court for him, the amount of damages assessed by the condemnation commissioners, even though the amount of compensation is later contested by either party. State ex rel. City of St. Louis v. Oakley, 354 Mo. 124, 188 S.W.2d 820 (1945); State ex rel. State Highway Commission of Missouri v. Day, 327 Mo. 122, 351 S.W.2d 37 (1930). See also State ex rel. State Highway Commission v. Kendrick, 383 S.W.2d 740, 743 (Mo. Sup.1964); City of St. Louis v. Kisling, 318 S.W.2d 221, 223–224 (Mo.Sup.1958); State ex rel. State Highway Commission v. Deutschman, 346 Mo. 755, 142 S.W.2d 1025, 1027 (1940); St. Louis Housing Authority v. Jower, 267 S.W.2d 344, 348 (Mo.Ct.App.1954); State ex rel. State Highway Commission v. Houchens, 235 S.W.2d 97, 101 (Mo.Ct.App.1950); accord, Covered Wagon, Inc. v. Commissioner of Internal Revenue, 369 F.2d 629, 633–634 (8th Cir. 1966).

■ The law is well settled, moreover, that an acquisition of property in condemnation proceedings constitutes a "sale or exchange" of the property for income tax purposes. Kieselbach v. Commissioner of Internal Revenue, 317 U.S. 399, 403, 63 S.Ct. 303, 87 L.Ed. 358 (1943); Covered Wagon, Inc. v. Commissioner of Internal Revenue, supra, 369 F.2d at 635; Wendell v. Commissioner of Internal Revenue, 326 F.2d 600, 602 (2d Cir. 1964); Hawaiian Gas Prod-

ucts v. Commissioner of Internal Revenue, 126 F.2d 4, 5 (9th Cir. 1942), cert. denied, 317 U.S. 653, 63 S.Ct. 48, 87 L.Ed. 525 (1942). Such a sale occurs no later than the vesting of title in the condemning authority. Contrary to taxpayer's position, it becomes apparent in the instant case that title to the condemned property vested in the condemning authorities no later than July 24, 1957, when both the City of St. Louis and the State of Missouri had deposited compensation with the court and took possession of the property. In view of the passage of title by operation of law in 1957, taxpayer's execution of a warranty deed to the condemning authorities in 1959 could have no operative effect.[4]

We conclude therefore that inasmuch as taxpayer's Labadie, Olive and 114–16 N. Broadway acquisitions were purchased subsequent to December 31, 1958, the expiration date for reinvestment, they do not qualify as replacement properties under § 1033(a) (3) (B) (i).

### II

Taxpayer also contends that the Tax Court erred in finding that the property located at 4005–07 Chouteau was in fact purchased by taxpayer's wholly-owned corporation, rather than by taxpayer himself, and consequently did not qualify as a replacement for property owned by taxpayer individually under § 1033 (a).

The record reveals that Olive M. Gutweiler, as straw party, took record title to this property by warranty deed dated March 12, 1957. At some undisclosed later date taxpayer advanced money to the A. K. Feinberg Real Estate Company to enable that corporation to purchase the Chouteau property. The property lay vacant during 1957 and 1958, but was leased during 1959 and 1960. The income and expenses attributable to these rentals were reported solely on the corporate return of the A. K. Feinberg Real Estate Company and not on taxpayer's individual return for these years.

These facts, we believe, readily support the Tax Court's conclusion that Olive M. Gutweiler acted as straw party for the A. K. Feinberg Real Estate Company in making the Chouteau acquisition. Section 1033(a) (3) (A) permits the nonrecognition of gain realized from an involuntary conversion "if *the taxpayer* * * *, for the purpose of replacing the property so converted, purchases other property similar or related in service or use to the property so converted * * *." (Emphasis added). The clear import of this section is that the taxpayer himself (or his straw party) must directly purchase the replacement property to qualify for nonrecognition treatment, and cannot indirectly achieve this same result by having his controlled corporation make the acquisition. Cf. Vim Securities Corporation v. Commissioner of Internal Revenue, 130 F.2d 106 (2d Cir. 1942), cert. denied, 317 U.S. 686, 63 S.Ct. 260, 87 L.Ed. 530 (1942). While a taxpayer may act through the intermediary of a straw party, he must nevertheless be the real owner of the replacement property.

The evidence here does not warrant the conclusion that the purchasing corporation, the A. K. Feinberg Real Estate Company, was a mere sham in taxpayer's plan of acquisition. There is no contention that the corporation was organized by taxpayer primarily as a straw party to acquire the property in question. That corporation, so far as the record discloses, transacted business as a separate entity distinct from taxpayer in acquiring various parcels of property for taxpayer's real estate business. It alone accounted for the income and expenses allocable to the Chouteau property. Having availed himself of

---

4. The record discloses that taxpayer executed the warranty deed in 1959 at the request of his attorney, and not at the request of the condemning authorities. To allow taxpayer to determine by his own unilateral action, as the record suggests, when title passes in order to fix the date of the "sale or exchange" and the realization of gain would effectively circumvent the provisions of § 1033(a) (3) (B) (i).

the tax advantages of using the corporate form to perpetuate his business, taxpayer must likewise accept its tax disadvantages as well. Higgins v. Smith, 308 U.S. 473, 477, 60 S.Ct. 355, 84 L.Ed. 406 (1940).

In summary, we find substantial evidence in the record to sustain the Tax Court's refusal to disregard the corporate existence of taxpayer's wholly-owned corporation, and we affirm its finding that the corporation's purchase of replacement property does not qualify for the nonrecognition treatment afforded by Section 1033(a) (3) (A).

### III

Taxpayer purchased property located at 120 N. Broadway in October, 1953, subsequent to the threat of condemnation but prior to the actual condemnation. Although the purchase of this property was consummated well within the applicable reinvestment period, the Tax Court nevertheless declined to treat it as replacement property for the reason that taxpayer did not have the requisite intention of purchasing this property for the purpose of replacing the condemned airport property.[5]

Basically a fact question was presented to the Tax Court. We are not disposed to disturb findings of fact on review unless clearly erroneous. Rule 52(a), Fed.R.Civ.P.; Commissioner of Internal Revenue v. Duberstein, 363 U.S. 278, 291, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960); Loco Realty Company v. Commissioner of Internal Revenue, 306 F.2d 207, 209 (8th Cir. 1962). We find substantial evidence on the record in support of the Tax Court's findings and its disposition of this issue. The evidence, in our view, negatives an intention on the part of taxpayer to replace condemned property at the time of the 120 N. Broadway purchase, and suggests that taxpayer formulated his replace-

ment intent some years later to expedite his difficulties with the Internal Revenue Service. Moreover, taxpayer's failure on his original returns and on his amended 1958 return to adjust the basis of the 120 N. Broadway property for any unrecognized gain, as required by Section 1033(c), is clearly inconsistent with a replacement intent at the time of purchase.

Accordingly, the decision of the Tax Court is in all respects affirmed.

---

5. Section 1033(a) (3) (A) provides in pertinent part:

"Nonrecognition of gain.—If the taxpayer, * * * *for the purpose of* replacing the property so converted, purchases other property * * *, at the election of the taxpayer [recognition of] the gain shall be [deferred]." (Emphasis added).