JAMES RIVER APARTMENTS, INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4917–67. Filed March 25, 1970.

*Edwin T. Steffy* and *Phillip Heller Sachs*, for the petitioner.
*Thomas C. Morrison*, for the respondent.

626

628

## OPINION

KERN, *Judge:* As a result of certain stipulations and concessions by the parties in the instant case most of the facts, and even most of the tax consequences arising from these facts, are no longer in dispute. The parties now agree that the final award gain is recognizable and taxable as capital gain in petitioner's 1964 tax year, and that the mortgage gain and the deposit gain are to be treated as capital gains realized and recognizable in petitioner's 1958 tax year. The parties also agree that any issues with respect to sections 1311 through 1315, raised by respondent in his amended answer, are not now subject to disposition for lack of the prerequisite "determination" as defined in section 1313, though respondent asserts that he is not precluded from relying upon sections 1311 through 1315 issue in subsequent litigation if it should become necessary.

One issue remains for our decision. It arises from the fact that respondent's statutory notice of deficiency with respect to the 1958 gains was mailed to petitioner almost 9 years after petitioner's timely filed 1958 income tax return was due. Thus, we must decide the question of whether or not the provisions of section 1033(a)(3) permit the assessment of any deficiency with respect to petitioner's 1958 condemnation gains.

The portions of section 1033 pertinent to the instant controversy are as follows:

SEC. 1033. INVOLUNTARY CONVERSIONS.

(a) GENERAL RULE.—If property (as a result of its destruction in whole or in part, theft, seizure, or requisition or condemnation or threat or imminence thereof) is compulsorily or involuntarily converted—

(1) CONVERSION INTO SIMILAR PROPERTY.—Into property similar or related in service or use to the property so converted, no gain shall be recognized.

* * * * * * *

(3) CONVERSION INTO MONEY WHERE DISPOSITION OCCURRED AFTER 1950.— Into money or into property not similar or related in service or use to the converted property, and the disposition of the converted property (as defined in paragraph (2)) occurred after December 31, 1950, the gain (if any) shall be recognized except to the extent hereinafter provided in this paragraph:

(A) NONRECOGNITION OF GAIN.—If the taxpayer during the period specified in subparagraph (B), for the purpose of replacing the property so converted, purchases other property similar or related in service or use to the property so converted, * * * at the election of the taxpayer the gain shall be recognized only to the extent that the amount realized upon such conversion (regardless of whether such amount is received in one or more taxable years) exceeds the cost of such other property * * *. Such election

shall be made at such time and in such manner as the Secretary or his delegate may by regulations prescribe. * * *

(B) PERIOD WITHIN WHICH PROPERTY MUST BE REPLACED.—The period referred to in subparagraph (A) shall be the period beginning with the date of the disposition of the converted property, * * * and ending—

(i) 2 years after the close of the first taxable year in which any part of the gain upon the conversion is realized, or

(ii) subject to such terms and conditions as may be specified by the Secretary or his delegate, at the close of such later date as the Secretary or his delegate may designate on application by the taxpayer. Such application shall be made at such time and in such manner as the Secretary or his delegate may by regulations prescribe.

(C) TIME FOR ASSESSMENT OF DEFICIENCY ATTRIBUTABLE TO GAIN UPON CONVERSION.—If a taxpayer has made the election provided in subparagraph (A), then—

(i) the statutory period for the assessment of any deficiency, for any taxable year in which any part of the gain on such conversion is realized, attributable to such gain shall not expire prior to the expiration of 3 years from the date the Secretary or his delegate is notified by the taxpayer (in such manner as the Secretary or his delegate may by regulations prescribe) of the replacement of the converted property or of an intention not to replace, and

(ii) such deficiency may be assessed before the expiration of such 3-year period notwithstanding the provisions of section 6212(c) or the provisions of any other law or rule of law which would otherwise prevent such assessment.

Pursuant to authority expressly delegated to respondent by Congress by virtue of section 1033(a)(3)(A) and 1033(a)(3)(C), respondent has published Income Tax Regulations sections 1.1033(a)–2(c)(2) and 1.1033(a)–2(c)(5) relating to the *manner* in which a taxpayer may elect to defer recognition of gain on an involuntary conversion and to the *manner* in which a taxpayer who has made such an election shall notify respondent of reinvestment or of an intention not to reinvest the proceeds realized from an involuntary conversion. These regulations provide as follows:

Sec. 1.1033(a)-2. Involuntary conversion where disposition of the converted property occurred after December 31, 1950.

(c) *Conversion into money or into dissimilar property*

*        *        *        *        *        *        *

(2) All of the details in connection with an involuntary conversion of property at a gain (including those relating to the replacement of the converted property, or a decision not to replace, or the expiration of the period for replacement) shall be reported in the return for the taxable year or years in which any of such gain is realized. * * * If, at the time of filing such a return, the period within which the converted property must be replaced has expired, or if such an election is not desired, the gain should be included in gross income for such year or years in the regular manner. A failure to so include such gain in gross income in the regular manner shall be deemed to be an election by the taxpayer * * * even though the details in connection with the conversion are

not reported in such return. If, after having made an election under section 1033(a)(3), the converted property is not replaced within the required period of time, or replacement is made at a cost lower than was anticipated at the time of the election, or a decision is made not to replace, the tax liability, for the year or years for which the election was made shall be recomputed. Such recomputation should be in the form of an "amended return." * * *

(5) If a taxpayer makes an election under section 1033(a)(3), any deficiency * * * attributable to such gain may be assessed at any time before the expiration of three years from the date the district director with whom the return for such year has been filed is notified by the taxpayer of the replacement of the converted property or of an intention not to replace, or of a failure to replace, within the required period, notwithstanding the provisions of section 6212(c) or the provisions of any other law or rule of law which would otherwise prevent such assessment. * * * Such notification should be made in the return for the taxable year or years in which the replacement occurs, or the intention not to replace is formed, or the period for replacement expires * * *

Although petitioner failed to make an affirmative explicit election under section 1033 on its 1958 return and although its failure to report in that return any gain from the condemnation of its leasehold interest was due to what it now contends was a mistake, respondent contends and petitioner does not seriously deny that petitioner nevertheless made a constructive election to have section 1033 apply to its 1958 condemnation gains by failing to include any part of these gains in gross income in its 1958 return "in the regular manner" as described in regulations section 1.1033(a)–2(c)(2) set out above. We agree. *Feinberg* v. *Commissioner*, 377 F. 2d 21, 24 (fn. 2) (C.A. 8, 1967), affirming 45 T.C. 635 (1966). See also H. Rept. No. 798, to accompany H.R. 3590 (Pub. L. No. 251, ch. 661) 82d Cong., 1st Sess., p. 4 (1951), providing for the enactment of the predecessor of section 1033(a)(3), which contained the following paragraph:

The Bill also provides specifically that the benefits of section 112(f)(3) are elective. Such election is to be made at such time and in such manner as the Secretary may prescribe by regulations. Such regulations could provide, for example, that a failure to report the gain on the return for the taxable year in which the gain is realized shall constitute an election to take the benefits of section 112(f)(3).

The only substantial problem which remains for us to decide is whether a notification called for by section 1033(a)(3)(C)(i) as a prerequisite to the beginning of the 3-year extension of "the statutory period for the assessment of any deficiency" was given by petitioner which complied with the appropriate statute and regulations. Petitioner makes no contention that the information contained in its 1959 return constituted a notification "of the replacement of the converted property or of an intention not to replace" as required

by section 1033(a)(3)(C)(i) since it is obvious that the converted property had not been replaced and the petitioner had no intention not to replace it. However it does contend that the 1959 return constituted a notification of "a failure to replace" within the meaning of Income Tax Regulations section 1.1033(a)–2(c)(5) and therefore the 3-year period of limitation on the assessment of a deficiency arising from the realization of gain from the conversion of property on condemnation begins from the date of the filing of the 1959 return.

In our opinion petitioner's 1959 income tax return does not constitute a valid notification under section 1033(a)(3)(C)(i) even if that section is construed as if it contained the liberalizing interpolation of section 1.1033(a)–2(c)(5) of the regulations. The limited information submitted in petitioner's 1959 return identifies the condemnation by including in the liabilities on its balance sheet an item in "Schedule L—Other Liabilities" figures showing a "Net Credit in Condemnation" of $420,813.01. The balance sheet information which appeared on petitioner's 1959 return and its other income tax returns was included therein and submitted only to meet normal filing requirements irrespective of a possible 1033 election. It appears unlikely to us that, even after a careful inspection of petitioner's 1959 return, an agent of respondent would be able to conclude that there was a condemnation during the previous taxable year with respect to which either section 1033 had been elected or a tax had not been paid. No record of petitioner's constructive 1033 election was available to respondent; indeed, in the statutory scheme of section 1033 it is envisioned that no such record be kept by respondent. The information on petitioner's balance sheet on its 1959 return, and the attachments thereto, does not even identify the existence of a condemnation gain in the prior taxable year as giving rise to the "Net Credit in Condemnation" carried as a liability therein. We are unable to conclude that petitioner's 1959 income tax return provided the notification to the respondent required by law. See *Angelus Milling Co.* v. *Commissioner*, 325 U.S. 293; *Commissioner* v. *Lane-Wells Co.*, 321 U.S. 219.

Even if we should assume *arguendo* that the petitioner's 1959 tax return constituted a proper notification to respondent under the regulations that there had been "a failure to replace" property involuntarily converted in 1958, it would be our opinion that such a notification would not be the notification prescribed by section 1033(a)(3)(C)(i) as a prerequisite to the start of the period of limitation therein provided. That section provides that the statutory period for the assessment of any deficiency for a year in which a part of the gain from a conversion is realized "shall not expire prior to the expiration of 3 years from the date the Secretary or his

delegate is notified by the taxpayer * * * of the replacement of the converted property or of *an intention not to replace*." (Emphasis supplied.) The statute does not require a notification of "a failure to replace"; it obviously considers the important subjects of the notification to be replacement or "intention not to replace." *Adolph K. Feinberg* indicates the importance of "the requisite intent during the specified period of time" (45 T.C. at 642) even though the subparagraph of section 1033 under discussion was 1033(a)(3)(A) rather than 1033(a)(3)(C)(i). The statute delegates to the Secretary or his delegate to prescribe by regulation the *manner* in which the notification should be made, not the subject matter of the notification. Neither section 1033(a)(C)(i) nor its legislative history indicates that "the Secretary or his delegate" has the power to prescribe regulations stating that a notification of a mere "failure to replace," not coupled with an "intention not to replace," is sufficient to commence the running of the section 1033(a)(C)(i) statute of limitations. See *Southern Maryland Agricultural Fair Association*, 40 B.T.A. 549, 552, and cases cited therein.

For the reasons above stated we conclude that petitioner did not give to respondent the notification prescribed by section 1033(a)(3)(C)(i) as a beginning of the statutory period for the assessment of a deficiency for the taxable year (1958) attributable to the gain realized by petitioner in that year on the conversion here in question. Accordingly, respondent is not barred from assessing such a deficiency.

In order to reflect the concessions made by the parties and our conclusions herein,

*Decision will be entered under Rule 50.*