Hamilton D. Hill and Millie K. Hill v. Commissioner.
Hill v. Comm'r
Docket Nos. 2034-68, 3222-69. United States Tax Court
T.C. Memo 1971-127; 1971 Tax Ct. Memo LEXIS 204; 30 T.C.M. (CCH) 534; T.C.M. (RIA) 71127; June 1, 1971, Filed Hamilton D. Hill, pro se, Star Route, P. O., Seeley Lake, Mont.Eugene P. Bogner, for the respondent. ATKINS
Memorandum Findings of Fact and Opinion ATKINS, Judge: The respondent determined deficiencies in income tax as follows: Year
Deficiency
1964
$ 1,360.27
1965
1,729.02
1966
1,180.03
The issues presented for decision are: (1) whether the statutory notices *208 of deficiency were validly executed; (2) whether the income tax return filed by petitioner Hamilton Hill for the taxable year 1965 constituted a joint return of Hamilton and Millie Hill; (3) whether petitioners are entitled to dependency exemption deductions for the mother and brother of Millie Hill for each of the taxable years 1964 through 1966; (4) whether petitioners are entitled to a loss deduction in the taxable year 1964 as a result of the appropriation by the State of New York of certain interests in property owned by petitioner Hamilton Hill; (5) whether petitioners are entitled to loss deductions in the taxable year 1966 with respect to certain property which had been owned by Hamilton Hill's deceased father; and (6) whether petitioners were engaged in the trade or business of farming during the years 1964 through 1966 entitling them to claimed business deductions. Some of the facts have been stipulated and are incorporated herein by this reference. Issue 1 Findings of Fact The notice of deficiency with respect to the taxable year 1964 was dated February 13, 1968. Such notice was signed "Roland 535 V. Wise" together with the printed designation of title "District *209 Director." The initials "N M" were signed following the designation of title. The district director's name and the initials which followed were written by Ned Miller who was the chief of the audit division of the district director's office in Salt Lake City, Utah at the time of such writing. The notices of deficiency with respect to the taxable years 1965 and 1966 were dated April 3, 1969. Such notices were signed "Richard E. Whittaker" together with the typewritten designation of title "Chief, Appellate Branch Office." Such signature was written by Richard E. Whittaker who was the chief of the appellate branch office in Salt Lake City, Utah at the time of such writing. Opinion As applicable to the years before us, section 6212 of the Internal Revenue Code of 1954 provided in part as follows: SEC. 6212. NOTICE OF DEFICIENCY. (a) In General. - If the Secretary or his delegate determines that there is a deficiency in respect of any tax imposed by subtitles A or B, he is authorized to send notice of such deficiency to the taxpayer by certified mail or registered *210 mail. Pursuant to revisions of Delegation Order No. 77, chiefs of appellate branch offices and chiefs of district audit divisions possessed the delegated authority to sign and mail statutory notices of deficiency during the times here involved, namely, as of February 13, 1968 and April 3, 1969. See Delegation Order No. 77 (Rev. 1) 1967-2 C.B. 598; Delegation Order No. 77 (Rev. 2) 1968-1 C.B. 740. In view of the above, it is clear that the notices of deficiency in question were validly executed within the meaning of section 6212 of the Code. Issue 2 Findings of Fact Hamilton D. and Millie K. Hill are husband and wife who had legal residence in Missoula County, Montana, at the time their petitions were filed herein. They filed joint income tax returns for the taxable years 1964 and 1966 with the district director of internal revenue, Salt Lake City, Utah. A return which purported to be a joint income tax return for the taxable year 1965 was filed by Hamilton Hill with such district director. On such return the names "Hamilton D. Hill" and "Millie K. Hill" were listed at the top of the first page and filing status was indicated as "Married filing *211 joint return." The return was signed "Hamilton D. Hill" followed by the notation "wife away caring for ailing mother." The Hills had filed joint income tax returns for a number of years prior to the taxable year 1965 and have filed joint returns for subsequent taxable years. Millie Hill maintained the records from which the Hills' returns were prepared. Her dividend income was included in the income which was reported on the 1965 return and no separate return was filed by her for 1965. During the time in which the 1965 return was prepared and filed, Millie Hill was in Puyallup, Washington caring for her mother. Because Hamilton Hill believed that there was insufficient time to obtain her signature prior to the April 15 filing date, the return for 1965 was filed as described above. In the notice of deficiency with respect to the taxable year 1965, the respondent determined that the return for such year did not constitute a joint return. He accordingly determined that the dependency exemption deduction claimed with respect to Millie Hill was not allowable, that the allowable standard deduction was limited to $500, and that dividend income of Millie Hill in the amount of $271.08 was *212 not properly includable in the income reported on such return. He determined the tax liability at the rates provided for individuals rather than those provided for husbands and wives filing joint returns. Opinion Section 6013(a) of the Code provides that, with certain exceptions not here relevant, "A husband and wife may make a single return jointly of income taxes * * * even though one of the spouses has neither gross income nor deductions." It is well established that the failure of one spouse to sign a return will not preclude treating such return as a joint return if both spouses so intended at the time the return was filed. Muriel Heim, 27 T.C. 270, and cases cited therein. The burden of proof as to such intent is upon the petitioner. Welch v. Helvering, 290 U.S. 111. At the trial Hamilton Hill testified that he intended the 1965 return to constitute a joint return and Millie Hill testified that she would have signed such return had she not been away caring *213 for her mother. In view 536 of the above, together with the facts and circumstances of record, it is our opinion that the return filed for the taxable year 1965 constituted the joint return of Hamilton and Millie Hill at the time it was filed. Accordingly for such year the respondent erred in the determinations referred to hereinabove. Issue 3 Findings of Fact During the years 1964 through 1966, Hamilton Hill, sometimes hereinafter referred to as the petitioner, and his wife contributed to the support of his wife's mother and brother, Gertrude and William Raudebaugh. In 1964 Gertrude Raudebaugh was 90 years old and William Raudebaugh was 58 years old. Throughout the years 1964 through 1966 William was completely incapacitated because of emphysema. He had no income. During the years 1964 through 1966 funds in the amounts of $558.54, $500.00, and $435.00, respectively, were either sent to Gertrude and William or otherwise made available to them by petitioners. In March 1965 Gertrude became ill. At that time Millie Hill withdrew $150 from a bank account maintained by the petitioners in Salt Lake City, Utah. Of such amount, $65 was utilized by her to obtain roundtrip transportation *214 to Puyallup, Washington, the city where her mother resided. The amount remaining, together with an additional sum of $50, was utilized by her to support her mother, brother, and herself during the time she spent in Puyallup. In addition to the above, expenditures were made by the petitioners in the amounts of $22.83 in 1965 and $45 in 1966 to purchase a coat and eye glasses for Gertrude Raudebaugh. During the years 1964 through 1966, Gertrude and William Raudebaugh resided in a two-bedroom residence which was left to Gertrude by her deceased husband. The fair rental value of such residence was about $40 per month. Throughout such years Gertrude received monthly social security payments of about $42.50 which were used by her for her support and the support of William. Perry Raudebaugh, another son of Gertrude, also contributed to her support and the support of William during the years 1964 through 1966. On each of their returns for the taxable years 1964 through 1966 the petitioners claimed dependency exemption deductions for Gertrude and William. In the notices of deficiency such deductions were disallowed. Opinion It is unclear whether petitioners are maintaining that *215 they are entitled to dependency exemption deductions for Gertrude and William Raudebaugh under section 151 of the Code because they complied with the provisions of section 152(a) of the Code or because they complied with the provisions of section 152(c) of the Code. [1] In any event, to come within the provisions of either section 152(a) or section 152(c) would require a showing that the petitioners alone, or in conjunction with Perry 537 Raudebaugh provided more than one-half the support of Gertrude and more than onehalf the support of William during each of the years 1964 through 1966. This they have failed to do. *216 It is clear that the social security payments and the fair rental value of the housing here involved are to be considered as items of support of Gertrude and William within the provisions of section 152. Section 1.152-1(a)(2) of the Income Tax Regulation. It is also clear that the value of personal services rendered by Millie Hill to Gertrude and William during the years in question does not constitute such an item of support. Mildred Bartsch, 41 T.C. 883; Frank Markarian, 42 T.C. 640, affd. (C.A. 7), 352 F. 2d 870, rehearing denied, 352 F. 2d 870, certiorari denied 384 U.S. 988. In view of the above, the record establishes that Gertrude Raudebaugh provided support for herself in the amount of about $495 during each of the years 1964 through 1966 and support for her son William in a like amount during each of such years. Viewing the evidence presented on behalf of petitioners in the most favorable manner, it is clear that the support furnished by them for Gertrude or William during any of the years in question was less than that furnished by Gertrude. Even if the expenses incurred *217 by Millie Hill during her 1965 visit to Puyallup to care for her mother were treated as qualifying entirely as support for Gertrude, the record would establish that petitioners expended only the following amounts for the support of Gertrude and William during the years in question: 1964
1965
1966
$ 279.27
$ 472.83
$ 262.50
279.27
250.00
217.50
Moreover, inasmuch as the amounts contributed by Perry Raudebaugh to the support of Gertrude and William during the years 1964 through 1966 are not disclosed by the record, there is no basis for concluding that petitioners would be entitled to dependency exemptions within the meaning of section 152(c). Even if such amounts were established or could reasonably be approximated, there is no showing that the declarations prescribed by section 152(c)(4) were filed. In view of the above, it is our conclusion that petitioners have failed to show that they are entitled to dependency exemption deductions for Gertrude or William in any of the taxable years 1964 through 1966. Issue 4 Findings of Fact Petitioner Hamilton D. Hill acquired a one-third interest in two contiguous parcels of real estate *218 located in Oswego, New York, upon the death of his grandfather, Dennis Donovan, who died intestate on December 14, 1913. [2]
In 1918, pursuant to a judgment in a partition proceeding, conveyances were made by all the heirs at law of Dennis Donovan, as a result of which Hamilton Hill became the outright owner of one of the above parcels. Thereafter, on April 28, 1928, upon the death of DeWitt Donovan, one of the heirs of Dennis Donovan, Hamilton Hill and his aunt Elizabeth Bailly each became a one-half owner of the second parcel above referred to. [3]
Situated on these properties were a gasoline station and a 2-family residence. Elizabeth Baily resided in a portion of such residence, the other portion of which was rented, as was the *219 gasoline station. Since 1933 the petitioner has received no rental income from such property, any such rental having been received by Elizabeth Bailly. During 1964 a substantial portion of the 2 parcels of property referred to above, including the residence and gasoline station, was appropriated by the State of New York for use in a highway construction project in and around Oswego. Compensation for the property appropriated was not settled amicably and the matter was litigated by petitioner and Elizabeth Bailly in the Court of Claims of the State of New York. By decision of such court dated January 9, 1968, the petitioner was awarded the amount of $30,083, together with appropriate interest, for his interests in the property appropriated. In March 1968, both he and the State of New York appealed from the above decision, and such appeals were pending at the time of the trial herein. While the highway has been completed, petitioner has not actually received any payment of compensation to date. 538 During 1966 the petitioner incurred expenses in the respective amounts of $37.97 and $319.88 for legal fees and travel relating to the New York proceedings. In 1966 he paid taxes *220 in the amount of $6.05 with respect to the New York property. On their returns for each of the taxable years 1964 through 1966 the petitioners claimed the standard deduction. On "Schedule C - Profit (or Loss)from Business or Profession" of their return for the taxable year 1964 they stated their principal business activity as "real estate rental"with business location in Oswego, New York. On such schedule they claimed as a deduction the amount of $79,601.60 as loss of business property resulting from the New York appropriation. [4] Such loss was also claimed on their return for 1965, but no Schedule C was included with respect to the New York property. On Schedule C of their return for the taxable year 1966 they stated their principal business activity as "Gasoline Station and rental housing"with business location in Oswego. On such return they again claimed as a deduction a loss in the amount of $79,601.60, and also claimed as deductions the amount of $6.05 as property taxes and the respective amounts of $37.97 and $319.88 as legal fees and travel relating to the New York proceedings. *221 In the notices of deficiency with respect to the taxable years 1964 through 1966 the respondent disallowed all the above described deductions. Opinion It is well settled that the appropriation of property by a governmental body pursuant to its powers of eminent domain constitutes a "sale" of such property for tax purposes. Hawaiian Gas Products v. Commissioner, (C.A. 9) 126 F. 2d 4, affirming 43 B.T.A. 655; Commissioner v. Kieselbach, (C.A. 3) 127 F. 2d 359, affd. 317 U.S. 399. Accordingly, the amount of gain or loss with respect to the property appropriated is determined pursuant to the provisions of section 1001 of the Code. [5] Such gain or loss is the difference between the amount realized by the taxpayer as compensation for the property appropriated and the taxpayer's adjusted basis in such property, not the property's fair market value. *222 Where, as here, the amount of compensation for the property cannot be ascertained because of litigation with respect thereto, the amount realized by the taxpayer cannot be determined until such litigation is settled. Only when such litigation is settled, therefore, does the taxpayer realize gain or loss for tax purposes. Nitterhouse v. United States, (C.A. 3) 207 F. 2d 618, certiorari denied 347 U.S. 943. See also Feinberg v. Commissioner, (C.A. 8) 377 F. 2d 21, affirming 45 T.C. 635; General Baking Co., 48 T.C. 201, and cases cited therein. Thus, in view of the fact that at the time of the trial herein petitioner and the State of New York were engaged in litigation with respect to the amount of compensation to be awarded him for his interests in the property appropriated, it is clear that he did not realize any loss for tax purposes during the years 1964 through 1966. Turning our attention to the deduction in the amount of $6.05 claimed by petitioners on their 1966 return for property taxes on the New York property, *223 inasmuch as petitioners claimed the standard deduction on such return, a deduction for property taxes would be allowable only if the petitioners held such property in the conduct of a trade or business or for the production of 539 income. [6] Even if the petitioner might be considered as having held his interests in the New York property in connection with a trade or business or for the production of income prior to the year 1966, a conclusion of dubious merit in view of the fact that his aunt had received whatever rentals were derived from the property since 1933, it seems clear that in 1966 he was not so holding the property remaining after the New York appropriation. The only income producing assets, namely, the gasoline station and the residence, had been appropriated in 1964 and, in calculating his loss, the petitioner himself considered the remaining property as worthless. The petitioner is not entitled to this claimed deduction. *224 As to the expenditures for travel and legal fees relating to the New York appropriation proceedings which were claimed as deductions on petitioners' 1966 return, suffice it to say that such expenditures appear clearly to be capital in nature and, hence, not deductible. Issac G. Johnson & Co. v. United States, (C.A. 2) 149 F. 2d 851. See also Woodward v. Commissioner, 397 U.S.572; United States v. Hilton Hotels Corp., 397 U.S. 580. Issue 5 Findings of Fact Hamilton Hill's father died May 11, 1966, a resident of the village of Seven Hills, Cuyahoga County, Ohio. Under his father's will the petitioner was entitled to one-half of the residue of his father's estate. Such residue consisted of his father's residence and household furniture together with cash in the amount of $14,871.29 and Liberty Mortgage Corporation notes in the face amount of $5,700. In an appraisal ordered by and submitted to the Probate Court of Cuyahoga County the residence was valued at $27,500 and the household furniture at $400. In such appraisal the Liberty Mortgage Corporation notes were valued at Zero together with the notation "The Liberty Mortgage Corporation has been declared *225 a BANKRUPT. Because the notes are all subordinate to loans secured by mortgages on specific land and improvements, to the best of my knowledge, the above notes have no value." The petitioner signed a waiver with respect to notice of filing of the above appraisal wherein he consented to its approval. During 1966 the above residence and household furniture were sold by the administrator of the estate for the respective amounts of $24,000 and $1,628.82. On their return for the taxable year 1966 the petitioners claimed the amount of $6,756.34 as a loss upon the sale or exchange of the estate property. In calculating such loss, the household furniture was valued at $5,441.50 upon the basis of an undated inventory prepared by petitioner's father, the residence was valued at $28,000, and the Liberty Mortgage Corporation notes were valued at $5,700, their face amount. The loss claimed consisted of petitioner's onehalf share of the above, less his interest in the proceeds realized upon the sale of the residence and the household furniture. In the notice of deficiency the respondent determined the basis of the assets as follows: residence - $27,500; household furniture - $1,628.82; Liberty *226 Mortgage Corporation notes - 0. He further determined that a loss in the amount of $3,500 was sustained upon the sale of the residence, that petitioner's one-half share of such loss was in the amount of $1,750, and that pursuant to section 1211(b) of the Code the deduction of such loss for the taxable year 1966 was limited to $1,000. He accordingly disallowed the loss claimed by petitioners to the extent of $5,756.34. 540 Opinion Under section 1014 of the Code [7] the basis of property acquired from a decedent is generally the fair market value of the property at the date of decedent's death. Upon the record presented we cannot find that the determinations made by respondent with respect to the basis of the property received by petitioner from his deceased father were erroneous. We accordingly approve his determination as to the amount of loss allowable in 1966 with respect to the above assets. *227 Issue 6 Findings of Fact During the years 1964 through 1966 the petitioner was employed as a surveyor at the Dugway Proving Grounds in Dugway, Utah. During such years the petitioners owned land in Montana, Idaho, and Utah. The Montana property consisted of three separate parcels of about 159 acres, 53 acres, and 120 acres, respectively. During the years before us about 30 acres of such property were suitable for agricultural cultivation. The remaining acreage was covered with timber of various major types. The Montana property was acquired by petitioners during the period from about 1944 through 1953. During such period the petitioner was employed as a surveyor on various Federal projects in Montana and he and his wife resided on one of the above parcels. In or around the latter part of 1953, the petitioner moved to Idaho to work as a surveyor on a Federal irrigation project. Thereafter, efforts were made to rent the Montana property, but such efforts were abandoned sometime during the middle 1950's. Income from such property was last derived by petitioner in 1954. Such income consisted of proceeds from the sale of hay which was harvested by petitioners' son. At the time *228 of the trial herein, the petitioner had not visited the Montana property since 1959 or 1960. In 1954, while residing in Idaho, the petitioner acquired two separate city lots in the township of Sequae, Idaho. The total acreage of the two lots was about 5 acres. During the years before us one of such lots was suitable for agricultural purposes. Such lot had been planted in alfalfa by petitioner in 1954. Thereafter, the alfalfa had been cut and sold for several years, the last such sale occurring in 1961. During the years before us the lot was offered for rent but no income was derived therefrom. The other lot was not leveled and its use for agricultural purposes was limited to pasture land. During the years before us it to was offered for rent but no income was derived therefrom. In the latter part of 1956 the petitioner moved to Utah to work as a surveyor at the Dugway Proving Grounds. Thereafter, he and his wife homesteaded with respect to a 5-acre parcel of property in Terra, Utah. A patent with respect to such property was obtained in 1960 wherein title was taken in his wife's name. In 1961 or 1962 the petitioner developed a well for use in irrigating the property. Prior to *229 that time water had to be hauled to the property by petitioners. At the time of the trial herein the property had been leveled and fenced. About 2 of the 5 acres were under cultivation. In the course of developing the property the petitioner has planted the cultivated area in rye grass in the fall of the year. Such grass has been cut in early summer and the seeds obtained have been ultilized the succeeding fall. Proceeding in this manner the petitioner has been able to develop an additional 1/3 acre each year. During the summer months the petitioner has cultivated a garden of about 1/4 acre. The produce from such garden, in excess of that consumed by petitioners, has been sold. For the taxable years 1964 through 1966 the petitioners reported gross income from the sale of garden vegetables in the amounts of $17.70, $25.00, and $15.26, respectively. 541 For such years they claimed deductions, as farm expenses, in the amounts of $2,111.81, $2,419.10, and $2,903.13, respectively, resulting in claimed net farming losses of $2,094.11, $2,394.10, and $2,888.77, respectively. In the notices of deficiency, the respondent disallowed the claimed farming losses for each of the taxable *230 years 1964 through 1966 on the grounds that it was not established that they were incurred in the conduct of a trade or business, or that the claimed expenses were ordinary and necessary business expenses. Opinion As indicated heretofore with respect to Issue 4, inasmuch as petitioners claimed the standard deduction on their returns for each of the taxable years 1964 through 1966, the allowance of any of the items claimed as the farm expenses depends upon whether petitioners were engaged in the trade or business of farming during the years 1964 through 1966 within the meaning of sections 162 and 167 of the Code. [8]
*231 Initially it must be pointed out that the items claimed by petitioners as farm expenses defy any coherent classification. Although petitioner testified to the effect that the claimed deductions related to the improvement of his alleged farms, it strains our credulity that he in good faithconsidered some of the expenditures as so related. In addition to deductions claimed for depreciation of equipment, property taxes, and purchases of supplies such as fertilizer, lime and seed, deductions were also claimed for interest incurred by petitioner to purchase securities, expenditures related to the probate of his father's estate and to the New York appropriation proceedings, his state income taxes, expenses incurred by his wife to visit her mother, bank charges, postage, and the like. In any event, it is our opinion that petitioners have failed to show that they were engaged in the trade or business of farming with respect to any of the properties here involved during the years before us. The term "trade or business" as utilized in sections 162 and 167 of the Code implies an occupational undertaking *232 to which the taxpayer devotes time, attention or effort with substantial regularity. Fahs v. Crawford, (C.A. 5) 161 F. 2d 315. And, it is well established that a taxpayer may be engaged in more than one such undertaking within the meaning of such sections. Eugen H. Walet, Jr., 31 T.C. 461, affd. (C.A. 5) 272 F. 2d 694. Once sufficient activities on the part of the taxpayer are shown to exist, the determination of whether such activities constitute a trade or business within the meaning of sections 162 and 167 depends upon whether the activities are carried on by the taxpayer with the intent to realize a profit therefrom. Hirsch v. Commissioner, (C.A. 9) 315 F. 2d 731, affirming a Memorandum Opinion of this Court. While the expectation of profit need not be immediate, nor even reasonable, the activities in question must be motivated by the good faith intent to profit therefrom. Lamont v. Commissioner, (C.A. 2) 339 F. 2d 377, affirming a Memorandum Opinion of this Court. Turning our attention to the claimed expenditures *233 which related to the Montana and Idaho properties, we must initially point out that even if petitioners may have been engaged in the business of farming such properties at times prior to the years 1964 through 1966, that fact would not of itself establish that they were so engaged during the years before us. The carrying on of a business may, like any other human endeavor, be interrupted or abandoned. Here the record is devoid of proof that any activities of a farming nature were engaged in by petitioners with respect to the Montana and Idaho properties during the years before us. At the trial the petitioner testified, in effect, that he was holding the Montana property until a large timber operator attempted to develop the area in which such property was located as a sustained yield forest at which time he would join such an endeavor. Perhaps a hopefully profitable long-range plan could also be ascribed to the Idaho property in view of the location of such property. However, the possibility that petitioners might enter into commercial ventures with respect to the Idaho and 542 Montana properties at some tuture time when it might be deemed expedient to do so, does not suffice *234 to establish that petitioners were engaged in the trade or business of farming such properties during the years before us. American Properties, Inc., 28 T.C. 1100, affirmed (C.A. 9) 262 F. 2d 150. At the trial and again on brief the petitioner asserted that the timber on the Montana property grows without any activity on his part and, apparently, that he should therefore be considered as engaged in the business of farming with respect to the Montana property during the years before us. The assertion of such a truism is of no monmnt. The mere fact that one happens to be the owner of land upon which trees grow, is not, without concomitant activities of a commercial nature, sufficient to consider such owner as engaged in the business of farming. Turning our attention to the claimed expenditures which related to the Utah property, the record establishes that petitioners engaged in numerous activities with respect to such property during the years before us. However, the record does not establish that petitioners engaged in such activities with the intent of deriving a profit therefrom. At the trial the petitioner testified that he had produced 1,000 ibs. *235 of potatoes during 1965 which could have been sold, and that he also produced tomatoes which could have been sold. He further testified that he intended to continue to develop the Utah property by planting additional acreage in rye grass each fall. However, he did not testify that he intended to derive a profit from such activities, nor did he otherwise testify as to what product or products he ultimately planned to produce from which a profit might be derived. Indeed, his only testimony as to why his activities were conducted was to the effect that he wanted to make his homestead look as good as possible so as to induce the Bureau of Land Management to let him acquire an additional 5 acres. In view of the foregoing, it is our conclusion that petitioners have failed to establish that they were engaged in the trade or business of farming with respect to any of the properties owned by them during the years in question. We accordingly approve the respondent's determinations disallowing the claimed farming losses. Throughout the course of the proceedings herein the petitioners have made innumerable allegations that their constitutional rights have been violated, not only by the procedures *236 involved in the administration and resolution of tax matters, but also by alleged actions of others which occurred during the Ohio probate proceedings and during the New York appropriation proceedings. Before this Court will entertain an issue with respect to an alleged constitutional transgression, such issue must be seriously presented with some degree of particularity, together with supporting facts of record sufficient to establish the transgression alleged. Moreover, the transgression alleged must be of a type over which this Court has jurisdiction. See Barkley v. Commissioner, (C.A. 9) 418 F. 2d 575, affirming a Memorandum Opinion of this Court, certiorari denied 397 U.S. 976. In this light we have examined the allegations made by petitioners and in general have found them to be frivolous or wholly without merit. As to the constitutionality of this Court and its authority to resolve tax controversies of the nature here presented, suffice it to say that such matters are well settled. Nash Miami Motors, Inc. v. Commissioner, (C.A. 5) 358 F. 2d 636, *237 certiorari denied 385 U.S. 918, affirming a Memorandum Opinion of this Court and cases cited therein. See also Wickwire v. Reinecke, 275 U.S. 101. Decisions will be entered under Rule 50. Footnotes
1. Such sections of the Code provide in part as follows: SEC. 151. ALLOWANCE OF DEDUCTIONS FOR PERSONAL EXEMPTIONS. (a) Allowance of Deductions. - In the case of an individual, the exemptions provided by this section shall be allowed as deductions in computing taxable income. * * * (e) Additional Exemption for Dependents. - (1) In general. - An exemption of $600 for each dependent (as defined in section 152) - * * * SEC. 152. DEPENDENT DEFINED. (a) General Definition. - For purposes of this subtitle, the term "dependent" means any of the following individuals over half of whose support, for the calendar year in which the taxable year of the taxpayer begins, was received from the taxpayer (or is treated under subsection (c) as received from the taxpayer): * * * (3) A brother, sister, stepbrother, or stepsister of the taxpayer, (4) The father or mother of the taxpayer, or an ancestor of either, * * * (c) Multiple Support Agreements. - For purposes of subsection (a), over half of the support of an individual for a calendar year shall be treated as received from the taxpayer if - (1) no one person contributed over half of such support; (2) over half of such support was received from persons each of whom, but for the fact that he did not contribute over half of such support, would have been entitled to claim such individual as a dependent for a taxable year beginning in such calendar year; (3) the taxpayer contributed over 10 percent of such support; and (4) each person described in paragraph (2) (other than the taxpayer) who contributed over 10 percent of such support files a written declaration (in such manner and form as the Secretary or his delegate may by regulations prescribe) that he will not claim such individual as a dependent for any taxable year beginning in such calendar year.↩
2. The petitioner Hamilton Hill also received from the estate of his grandfather a one-third interest in several other parcels of real estate, the total of all real estate included in the estate being valued in the estate proceedings at $9,750.↩
3. Hamilton Hill and Elizabeth Bailly each received from the estate a one-half interest in several interests in real estate, the total of such real estate being appraised for estate purposes at $6,150.↩
4. In computing the claimed loss, petitioner Hamilton Hill concluded that the value of the entire property was about $150,000 and that his portion of such value was $79,601.60. He concluded that since he received no compensation in 1964 for the property and since he felt that the remaining portion of the real estate which was not appropriated was worthless, his loss figure was correct. No attempt was made to arrive at a basis for the property appropriated.↩
5. Such section provides in part as follows: SEC. 1001. DETERMINATION OF AMOUNT OF AND RECOGNITION OF GAIN OR LOSS. (a) Computation of Gain or Loss. - The gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the adjusted basis provided in section 1011 for determining gain, and the loss shall be the excess of the adjusted basis provided in such section for determining loss over the amount realized. (b) Amount Realized. - The amount realized from the sale or other disposition of property shall be the sum of any money received plus the fair market value of the property (other than money) received. In determining the amount realized - (1) there shall not be taken into account any amount received as reimbursement for real property taxes which are treated under section 164(d) as imposed on the purchaser, and (2) there shall be taken into account amounts representing real property taxes which are treated under section 164(d) as imposed on the taxpayer if such taxes are to be paid by the purchaser.↩
6. Section 63 of the Code provides in part as follows: TAXABLE INCOME DEFINED. * * * (b) Individuals Electing Standard Deduction. - In the case of an individual electing under section 144 to use the standard deduction provided in part IV (sec. 141 and following), for purposes of this subtitle the term "taxable income" means adjusted gross income, minus - (1) such standard deduction, and (2) the deductions for personal exemptions provided in section 151.
Section 62 of the Code provides in part as follows: ADJUSTED GROSS INCOME DEFINED. For purposes of this subtitle, the term "adjusted gross income" means, in the case of an individual, gross income minus the following deductions: (1) Trade and business deductions. - The deductions allowed by this chapter (other than by part VII of this subchapter) which are attributable to a trade or business carried on by the taxpayer, if such trade or business does not consist of the performance of services by the taxpayer as an employee. * * * (5) Deductions attributable to rents and royalties. - The deductions allowed by part VI (sec. 161 and following), by section 212 (relating to expenses for production of income), and by section 611 (relating to depletion) which are attributable to property held for the production of rents or royalties.↩
7. Section 1014 provides in part as follows: SEC. 1014. BASIS OF PROPERTY ACQUIRED FROM A DECEDENT. (a) In General. - Except as otherwise provided in this section, the basis of property in the hands of a person acquiring the property from a decedent or to whom the property passed from a decedent shall, if not sold, exchanged, or otherwise disposed of before the decedent's death by such person, be the fair market value of the property at the date of the decedent's death, or, in the case of an election under either section 2032 or section 811(j) of the Internal Revenue Code of 1939 where the decedent died after October 21, 1942, its value at the applicable valuation date prescribed by those sections. (b) Property Acquired From the Decedent. - For purposes of subsection (a), the following property shall be considered to have been acquired from or to have passed from the decedent (1) Property acquired by bequest, devise, or inheritance, or by the decedent's estate from the decedent;↩
8. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General. - There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * * SEC. 167. DEPRECIATION. (a) General Rule. - There shall be allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence) - (1) of property used in the trade or business * * *↩