**Clarence A. KOLSTAD, and Alta A. Kolstad, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Civ. No. 2599.**

United States District Court
D. Montana,
Havre-Glasgow Division.

Oct. 17, 1967.

Aronow & Anderson, Shelby, Mont., for plaintiffs.

Moody Brickett, U. S. Atty., Butte, Mont., and E. O. C. Ord, Atty., Dept. of Justice, Washington, D. C., for defendant.

## ORDER AND MEMORANDUM OPINION

JAMESON, Chief Judge.

Plaintiffs seek recovery of income taxes alleged to have been overpaid for the year ending December 31, 1959, and for an order granting plaintiffs an extension of time under Section 1033(a) (3) (B) (ii) of the Internal Revenue Code of 1954 within which to reinvest funds acquired through the involuntary conversion of their lands.

Section 1033(a) (3) provides in effect that if a taxpayer's property is involuntarily converted and if he reinvests the proceeds of such conversion within one year in similar property, the gain on such conversion, at the election of the taxpayer, is not recognized for tax purposes. The time for reinvestment may be extended by the Secretary of the Treasury or his delegate upon application of the taxpayer.

In 1955 plaintiffs' real property was condemned and a deposit of $233,649.20 was paid into court. In 1957 the plaintiffs were awarded a deficiency judgment of $287,096.80, and the court ordered the deficiency plus $30,676.10 interest and the original deposit, or total

of $551,423.10, paid to plaintiffs. Upon appeal by plaintiffs the judgment was affirmed in January, 1959. (262 F.2d 839).

The plaintiffs made timely application pursuant to section 1033(a) (3) (B) (ii) for an extension of time to reinvest the proceeds of the judgment in similar property. This application was denied.

In support of a motion for summary judgment defendant in effect argues (1) that the refusal of the Secretary to grant an extension is not a reviewable administrative determination; and (2) that if there is a limited right of review, as suggested in the court's opinion denying the motion to dismiss, the undisputed facts and affidavits show that there was a rational basis for the denial.

The court considered fully the legal arguments of the respective parties in its memorandum opinion of September 8, 1966, and concluded that the question of the reviewability of the Secretary's denial of plaintiffs' application was not free from doubt, recognizing that on a motion to dismiss any doubt must be resolved against the motion. The concluding paragraph of the opinion reads:

> "In all fairness, I must say that on the basis of the facts now before the court, it seems unlikely the court can find that the Commissioner did not have a rational basis for his decision and that his action was plainly arbitrary and capricious. It may be that following appropriate discovery a motion for summary judgment should be considered. The plaintiffs, however, should be given an opportunity to present whatever evidence they may have to support their contention. The court will then be in a better position to determine whether the agency determination is in fact reviewable."

Defendant has filed affidavits in support of its motion for summary judgment, and plaintiffs have filed counter-affidavits.

It is undisputed that (1) the time limit under section 1033(a) (3) (B) ex-pired on December 31, 1960; (2) plaintiffs made timely application for an extension, which was denied; (3) following denial the tax was paid on November 6, 1962; (4) a claim for refund was rejected by letter dated May 13, 1965; (5) this action was filed on October 14, 1965; and (6) the funds received by plaintiffs had not been reinvested in similar property at the time of the hearing on motion for summary judgment on September 18, 1967.

The Government has submitted affidavits of two agents of the Internal Revenue Service describing the investigation which they conducted and setting forth the information upon which the Commissioner relied in denying plaintiffs' request for an extension.

The affidavit of agent John E. Schreiber indicates that he spent approximately 40 hours in field investigation. He contacted individuals in Shelby, Great Falls, and Chester, Montana, including real estate dealers and friends of the Kolstads. This investigation disclosed that Mr. Kolstad had not contacted any realtors near his farm or in surrounding areas. The individuals contacted in Chester, Montana, the nearest town to the Kolstads' farm, had no knowledge that Mr. and Mrs. Kolstad wanted to buy land to replace their condemned farm. On the contrary, Mr. Kolstad had let it be known that he was retiring from farming and leaving Montana. With reference to a conference with Clarence A. Kolstad at the close of his investigation, Schreiber states: "During this conference Mr. Kolstad stated that he had invested the condemnation proceeds in securities and did not desire to put the entire amount back into land."

The affidavit of Darby O'Brien, a resident of Chester, Montana, who deals in real estate and insurance, supports the Internal Revenue Agent. He states that "to the best of my knowledge and impression Clarence A. Kolstad had indicated that he had retired from farming following the settling of the condemnation of his Tiber property."

The affidavit of Albert E. Dietz, another Internal Revenue Agent, states:

"In my opinion I gave these taxpayers every possible consideration and also gave them considerable time to obtain data regarding the availability of replacement farm land. All the information regarding replacement of property available was adverse to the taxpayers and they did nothing to refute my contention that land was available.

"Mr. Kolstad had been in to see me at the office on occasions following the Ninth Circuit's final decision regarding the amount of the award and to discuss the problem of land replacement. At these times it was impressed on him that the only way to avoid being taxed on this award was to make the reinvestment or be able to show that an honest conscientious effort was being made on his part to make the replacement. Mr. Kolstad stated that some of the land owned by Mrs. Kolstad individually was not going to be replaced.

"Upon receipt of the funds from the condemnation award, taxpayer, who was then living in Spokane, invested them in the stock market. In a discussion with Mr. Kolstad at the time that his claim for refund was denied, he informed me that he had made more in the stock market with these award funds than the amount of the tax."

Affidavits of two other real estate agents, one residing at Chinook, Montana, and the other at Havre, Montana, support the two agents.

Affidavits of the Group Supervisor and Chief of Review and Service Staff of the Montana Office of the Internal Revenue Service recite that they reviewed the reports of Agents Schreiber and Dietz and the decision of the Conference coordinator and gave careful consideration to plaintiffs' application for an extension.

The affidavit of Clarence A. Kolstad asserts that the reasons for his moving to Spokane was the health of his wife and education of his son, and not to retire from farming. He states that he "made legitimate attempts to find similar and like property to that farm and grass land taken by condemnation * * *, but he "was unable to find such like and similar replacement property"; that he discussed the matter with three real estate agents in Great Falls, Montana, and studied listings in a Great Falls paper; that he had been advised "that when both improved and unimproved property were converted, it was necessary to acquire both improved and unimproved property with the condemnation award". Kolstad states further that he "was at all times in a liquid position financially so that he could have bought property if some were found".

The three Great Falls real estate agents corroborated Kolstad's statement that he had contacted them on several occasions "in 1959 and 1960" and indicated that he was in the market for grazing land and farm land to replace the land taken by condemnation".

It is of course true, as plaintiffs contend, that summary judgment is proper only where there is no genuine issue of fact or where viewing the evidence and the inferences which may be drawn therefrom in the light most favorable to the adverse party, the movant is clearly entitled to prevail as a matter of law. All doubts as to the existence of a genuine issue as to any material fact must be resolved against the moving party. The court may not weigh evidence or resolve issues in determining a motion for summary judgment.[1]

On the other hand, Rule 56(e), F.R.Civ.P., as amended in 1963, provides. that in opposition to a motion for summary judgment an adverse party "may not rest upon the mere allegations or denials of his pleading" but must by affidavit or otherwise "set forth specific

---

1. See Falls Sand & Gravel Co. v. Western Concrete, Inc., et al., D.C., 1967, 270 F.Supp. 495, and cases there cited.

facts showing that there is a genuine issue for trial." While the movant has the burden to show that there is no genuine issue of any material fact, whenever, on the basis of the material presented by his affidavits, the moving party would be entitled to a directed verdict in a jury trial, "the burden of coming forward with specific controverting facts shifts to the opponent \* \* \*. It is his duty to expose the existence of a genuine issue which will prevent the trial from being a useless formality". Doff v. Brunswick Corporation, 9 Cir. 1967, 372 F.2d 801, cert. denied Oct. 9, 1967, 389 U.S. 820, 88 S.Ct. 39, 19 L.Ed. 2d 71.

Accepting as true all of the statements contained in plaintiffs' counter-affidavits and viewing all the evidence and the inferences to be drawn therefrom in the light most favorable to the plaintiffs, is defendant entitled to prevail as a matter of law?

▮▮ Assuming that a "limited review" is authorized, it is clear from the cases and text authorities cited in the memorandum of September 8, 1966, that judicial review is limited to "questions of jurisdiction, statutory interpretation, fair procedures, and substantial evidence"; that if there is a "rational basis" for the conclusions reached by the administrative agency and if all requirements of law are complied with, the court will not step in and substitute its own judgment for that of the administrative agency; and a taxpayer has a "heavy burden of proving that the Commissioner's action was plainly arbitrary".

▮ Tested by these standards, it is clear from the affidavits now before the court that defendant is entitled to a judgment as a matter of law. Mr. Kolstad does not deny the conferences with agents Schreiber and Dietz or their statements of what was said in those conferences. Nor is there any evidence to dispute the investigation detailed by these agents and the review thereof. One agent spent 40 days in his investigation. Both agents gave plaintiffs an opportunity to present any material to support their application for an extension. Mr. Kolstad's affidavit does not detail any information he submitted to the agent which they failed to consider. There is no evidence of failure to comply with any applicable statute or regulation. There is substantial evidence to support the decision of the Commissioner.[2]

While the year ending December 31, 1960, was the critical period in determining whether an extension should be granted, there is no evidence that the plaintiffs made any effort to reinvest any of the condemnation award in similar property subsequent thereto. As noted supra, it was conceded at the hearing on motion for summary judgment on September 18, 1967—over six years and eight months after the one year limitation expired—that no part of the award had been so invested.[3]

It is the conclusion of the court that it is clear from the affidavits before the court that there was a "rational basis" for the decision of the Commissioner, and that viewing the evidence in the light most favorable to the plaintiffs, defendant is entitled to judgment as a matter of law.

The motion for summary judgment is granted.

Pursuant to Rule 11 of the local rules of court, defendant will prepare, serve and lodge judgment in accordance with this opinion.

---

2. It may well be as counsel for plaintiffs argued at the hearing, that in view of the large acreage and the amount involved the court would have been inclined to grant the extension. I cannot say, however, that even viewing the evidence in the light most favorable to the plaintiff there was not substantial evidence and a rational basis for the decision of the commissioner.

3. This lends support to the conclusions of the agents and Commissioner. Had plaintiffs reinvested within a reasonable time, this might have suggested that the Commissioner's decision was arbitrary and capricious. The statute does not contemplate an indefinite extension to permit the taxpayer to locate similar property in which he desires to invest.