THERON M. LEMLY and MARY E. W. LEMLY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Lemly v. Commissioner
Docket No. 1301-72.
United States Tax Court
T.C. Memo 1973-147; 1973 Tax Ct. Memo LEXIS 142; 32 T.C.M. (CCH) 697; T.C.M. (RIA) 73147; July 2, 1973, Filed Hubert A. McBride, for the petitioners. John B. Harper, for the respondent. Dawson
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: Respondent determined a deficiency of $7,039.86 in petitioners' Federal income tax for the year 1969. 2 At issue is whether, under the particular circumstances of this case, respondent's agent, the Nashville District Director, abused his discretion in declining to grant the petitioners an extension of time in which to replace property involuntarily coverted. The answer turns upon whether the petitioners had reasonable cause for not having filed their application within the required period of time and the filing of such application was made within a reasonable time after the expiration of *143 the required period. The petitioners seek to avail themselves of the relief provisions of section 1033(a) (3), Internal Revenue Code of 1954, [1] and not recognize any gain in 1969. FINDINGS OF FACT Some of the facts have been stipulated by the parties, and those facts are so found. Theron M. Lemly and Mary E. W. Lemly, the petitioners herein, are husband and wife whose legal residence was Memphis, Tennessee, when they filed their petition in this proceeding. They filed a joint Federal income tax return for the calendar year 1969 with the district director of internal revenue at Chamblee, Georgia. 3 Theron M. Lemly (herein referred to individually as petitioner) operates a general insurance agency in Memphis, Tennessee. In 1969, he operated his agency in an office building which he owned at 1309 Poplar Avenue in that city. Portions of the building were rented to other persons and businesses. In 1969, petitioner's property at 1309 Poplar Avenue and two adjoining vacant lots (used for parking) were under threat of condemnation *144 by the State of Tennessee. As a result of the threat of condemnation, petitioner sold this property to the State on July 24, 1969, receiving $124,407.50 in net proceeds in August 1969. The net proceeds consisted of $79,677.41 in cash paid to petitioner with the remaining net proceeds being used to pay off the mortgage on the property and the real estate taxes due on it. Petitioner's adjusted basis in the property condemned was $44,555.50. On November 26, 1969, petitioner received from Yeates and Gaskill Architects an estimate that the cost of a proposed new building would be approximately $117,252. On January 8, 1970, petitioner entered into a contract for architectural services with Yeates and Gaskill Architects for the construction of a one-story office building with partial basement and with provisions for vertical expansion up to five floors, to be located at 1462 Poplar Avenue, Memphis, Tennessee. 4 In February 1970, certain general contractors were invited to bid on the construction of the building. By February 27, 1970, three bids had been received with the lowest bid being $187,335. In November 1970, an internal revenue agent notified the petitioners that *145 he had their 1969 joint income tax return for examination. Subsequently, a conference was arranged for December 30, 1970. On December 19, 1970, the petitioner's certified public accountant, Ben H. Merchant of Dallas, Merchant and Taylor, died unexpectedly. Mr. Merchant had been the petitioner's tax adviser for many years, and the petitioner relied upon him to handle all of his tax matters. Petitioners expended $74,517.09 of the net proceeds ($124,407.50) for replacement property, as defined in section 1033 of the Code, on or before December 31, 1970. The revenue agent held his first conference with petitioner on February 2, 1971. Also present at the conference was James S. Skinner, a certified public accountant with Dallas, Merchant and Taylor, an accounting firm to which Ben Merchant had belonged. The revenue agent's examination lasted from February 2, 1971, until some time in May 1971. After the conference on February 2nd, the revenue agent dealt exclusively with Skinner, then petitioner's accountant. During his examination he contacted Skinner approximately 5 five to seven times. During some of these contacts he mentioned the investment in replacement property *146 to Skinner. Prior to his last interview with Skinner in May, the revenue agent told him that he would require proof of the investment of the amount of the proceeds. The agent had not found such proof in the records which had been given to him. Skinner did not have the substantiation prior to the agent's asking for it. At the last interview Skinner gave the revenue agent a piece of paper written in long hand showing the amounts expended on replacement property. The substantiation showed that total replacement had not been made before December 31, 1970. At that time the revenue agent told Skinner that he felt compelled to make an adjustment to petitioner's income to account for the failure to fully replace the property. On June 17, 1971, the petitioner entered into a contract for the construction of a building having a partial basement, elevator and various site improvements, with Galloway-Wilson Construction Company at a cost of $174,945. On the same date performance bonds were executed and a savings and loan association committed itself to petitioner for a construction loan of $225,000 at 9-percent interest. Also on June 17, 1971, the petitioner signed a letter to the *147 6 Nashville District Director which reads as follows: It is requested that I be granted an extension of time within which to replace property that was involuntarily converted during the year ending December 31, 1969. The property owned by me at 1309 Poplar Avenue, Memphis, Tennessee and adjoining lots were sold to the State of Tennessee under threat of condemnation. I received proceeds of $124,407.50 (sale price $132,457.00 less $8,049.50 sales expense) from the conversion and through December 31, 1970 and I had reinvested $74,517.09 in replacement property. The property sold was used to house my own business and for rental of the remaining space to other tenants. Plans had been drawn and financing secured for construction of a building for similar use costing approximately $387,000.00. However, because of strikes by the craft trade unions in the construction industry an acceptable contract could not be obtained. The project had to be reconsidered. Present plans are to construct a building costing $250,000.00, bids have been let and construction to begin near July 1, 1971. By December 31, 1971 the building should be more than 50% completed and more than $175,000.00 expended. *148 This amount added to the $74,517.09 expended prior to December 31, 1970 would result in a total reinvestment by December 31, 1971 of $250,000.00. My tax return for 1969 has been examined by the Internal Revenue Service and the agent proposes an adjustment for the sale proceeds not reinvested by December 31, 1970 and an assessment of $7,039.86 additional tax. The death of my C.P.A. with whom I had dealt for years presented some problem in my not being advised to take action prior to the year end. I realize that this request for an extension was not made within the one year rule in effect at the time this sale was made; however, in view of the two year rule position taken by the Code, as amended by the Tax Reform Act of 1969, I will appreciate your granting this extension. 7 Petitioner's letter of June 17, 1971, was sent to the Nashville District Director on June 18, 1971, by Skinner with a transmittal letter that stated: We are including with Mr. Lemly's request for an extension of time for reinvestment of involuntary conversion proceeds our letter of the handling of his account. Mr. B. H. Merchant, a partner in our firm, died in December, 1970. He was in frequent personal *149 contact with Mr. Lemly and had been in charge of his account and tax matters. He also had been in charge of our tax department for a number of years. Thus, with his knowledge of both Mr. Lemly's business and tax regulations, we do not feel that Mr. Merchant would have let the year end go by without advising Mr. Lemly to file this extension request. This matter did not come to the attention of other members of our firm until after the Revenue Agent's examination was under way. We understand that extensions may be granted for reasonable cause even if filed after due date and in view of this particular case we ask that Mr. Lemly's requested extension be granted. Please let us know if we can be of any assistance. On June 24, 1971, the Nashville District Director, acting through his Review Staff in the Audit Division, denied the petitioner's request for an extension of time in which to replace the involuntarily converted property. Upon receipt of the rejection letter the petitioner contacted the Nashville District Director's office and discussed the rejection. Then, on October 5, 1971, Skinner sent another letter to the Nashville District Director, which was endorsed by petitioner, *150 requesting further consideration of the request for an extension. The letter 8 reads, in pertinent part, as follows: As we stated in our earlier letter, Mr. Ben H. Merchant, a partner in our firm and head of our tax department was personally in charge of Mr. Lemly's accounting and tax work and was in frequent contact with him. Mr. Merchant was the only member of our firm familiar with the details of Mr. Lemly's business. He died unexpectedly December 19, 1970, the Saturday, before Christmas. The proper time for filing an extension request timely would have been in the last few days of December. Mr. Lemly received $79,677.41 cash on the closing of the property transfer and through December 31, 1970 he had reinvested $74,517.09 in replacement property. Actually he was under the impression that he had made sufficient reinvestment. He did not receive the total net proceeds of $124,407.50 as $44,730.09 was withheld in the settlement to satisfy the mortgage debt on the property and his prorata share of realty taxes. Mr. Merchant would have known the regulations on such a transaction and I feel sure he would have so advised Mr. Lemly. The Revenue Agent's examination was then *151 begun and we allowed it to be concluded. We then sought relief on this, the only unresolved question, in light of Rev. Rul. 56-300, 1956-1CB624. This ruling stating that the granting of an extension on a delinquent [sic] application is not prohibited if the taxpayer can show reasonable cause. We believe that reasonable cause does exist in this case. In response to a follow-up by Mr. Lemly on his application he was given the reference to the James E. Latimer tax case, Dkt. 2853-67, 12-15-70. In this case and in two others I found a point which is quite dissimilar to Mr. Lemly's case. In Latimer it is pointed out that the proceeds were used for personal investment. In W. Q. Boyce (ct. cls.) 69-1 USTC para. 9124, 405 F.2d 526 the proceeds from the involuntary conversion had not been reinvested eight years later. And in C. A. Kolstad (DC) 67-2USTC para. 9705, although a timely application for extension was filed, there was shown a lack of any effort 9 made to replace the property. This was not Mr. Lemly's situation. Almost 36% of the proceeds were withheld *152 to pay off debts against the property and he did in fact reinvest nearly 60% of the proceeds prior to December 31, 1970. It was only because of the unavoidable delays as discussed in our previous correspondence that the total proceeds were not reinvested by that date. Bid openings on the building was April 6, 1971 and the construction which began June 16, 1971 is well under way. On November 8, 1971, Clare E. Lawry, Chief, Review Staff (District Director's office), again denied the request for an extension. By December 31, 1971, the petitioner had paid $65,030.40 to Galloway-Wilson Construction Company under the contract of June 17, 1971. By the end of 1971 the petitioner had also paid $11,809.94 to Yeates and Gaskill Architects on the contract of January 8, 1970. In his notice of deficiency dated November 24, 1971, respondent determined that the petitioners realized a long-term capital gain of $49,890.41 from the sale of the involuntarily converted property to the State of Tennessee. This amount represents the net proceeds from the sale of property ($124,407.50) less the investment in replacement property ($74,517.09) made before December 31, 1970. OPINION Prior to *153 its amendment by the Tax Reform Act of 1969, section 1033(a) (3) (b) provided: (a) General Rule. - If property (as a result of its destruction in whole or in part, theft, seizure, or requisition or condemnation or threat or imminence thereof) is compulsorily or involuntarily converted- * * * 10 (3) Conversion into money where disposition occurred after 1950. - Into money or into property not similar or related in service or use to the converted property, and the disposition of the converted property (as defined in paragraph (2)) occurred after December 31, 1950, the gain (if any) shall be recognized except to the extent hereinafter provided in this paragraph: (A) Nonrecognition of gain. - If the taxpayer during the period specified in subparagraph (B), for the purpose of replacing the property so converted, purchases other property similar or related in service or use to the property so converted, or purchases stock in the acquisition of control of a corporation owning such other property, at the election of the taxpayer the gain shall be recognized only to the extent that the amount realized upon such conversion (regardless of whether such amount is received in one or *154 more taxable years) exceeds the cost of such other property or such stock. Such election shall be made at such time and in such manner as the Secretary or his delegate may by regulations prescribe. * * * (B) Period within which property must be replaced. - The period referred to in subparagraph (A) shall be the period beginning with the date of the disposition of the converted property, or the earliest date of the threat or imminence of requisition or condemnation of the converted property, whichever is the earlier, and ending- (i) one year after the close of the first taxable year in which any part of the gain upon the conversion is realized, or (ii) subject to such terms and conditions as may be specified by the Secretary 11 or his delegate, at the close of such later date as the Secretary or his delegate may designate on application by the taxpayer. Such application shall be made at such time and in such manner as the Secretary or his delegate may by regulations prescribe. Section 1.1033(a)-2(c) (3), Income Tax Regs., governs whether a taxpayer *155 is to be given longer to replace his involuntarily converted property than one year (now two years under section 915(a), Tax Reform Act of 1969) after the close of the year in which any part of the grain is realized. That regulation provides: (3) The period referred to in subparagraphs (1) and (2) of this paragraph is the period of time commencing with the date of the disposition of the converted property, or the date of the beginning of the threat or imminence of requisition or condemnation of the converted property, whichever is earlier, and ending * * * one year * * * after the close of the first taxable year in which any part of the gain upon the conversion is realized, or at the close of such later date as may be designated pursuant to an application of the taxpayer. Such application shall be made prior to the expiration of * * * one year * * * after the close of the first taxable year in which any part of the gain from the conversion is realized, unless the taxpayer can show to the satisfaction of the district director - (i) reasonable cause for not having filed the application within the required period of time, and (ii) the filing of such application was made within *156 a reasonable time after the expiration of the required period of time. The application shall contain all of the details in connection with the involuntary conversion. Such application shall be made to the district director for the internal revenue district in which the return is filed for the first 12 taxable year in which any of the gain from the involuntary conversion is realized. No extension of time shall be granted pursuant to such application unless the taxpayer can show reasonable cause for not being able to replace the converted property within the required period of time. Petitioner contends that his application filed June 17, 1971, for an extension of time in which to reinvest the proceeds of the involuntary conversion in 1969 was filed within a reasonable time (5-1/2 months) after December 31, 1970, and that his failure to do so earlier was due to reasonable cause under these circumstances. Respondent counters with these arguments: (1) The Nashville District Director did not abuse his discretion in rejecting the petitioner's application for an extension of time to make the election; (2) the petitioner did not have reasonable cause for his failure to file a timely *157 request for an extension, but the failure was due to the "negligence" of the petitioner and his accountant; and (3) the application was not filed within a reasonable time. Quickly scampering to the safe harbor of the District Director's "satisfaction" in seeking absolute protection for his determination, respondent strongly urges that "the only way" this petitioner can prevail is by showing that the Nashville District Director abused his discretion in not granting petitioner's application for an extension. Despite respondent's position, this Court is not powerless to overturn the action of the District Director, nor is 13 it inextricably bound to follow what he has done in every situation.Under the regulations the petitioner must show both a reasonable cause for not having filed his application for an extension of time within the requisite period and that the subsequent filing of the application was made within a reasonable time after the expiration of the required time period. James E. Latimer, 55 T.C. 515, 521 (1970). On the facts of this case we think he has satisfied *158 both requirements. As to reasonable cause, petitioner was relying completely on his certified public accountant, Ben H. Merchant, who had handled all his tax matters for many years and who died unexpectedly in December 1970. In our judgment the death of his trusted tax adviser constitutes reasonable cause for petitioner's failure to file the application within the statutory period. See Rev. Rul. 72-27, 1972-1 C.B. 226. Cf. Boyce v. United States, 405 F.2d 526 (Ct. Cl. 1968), where the failure to file a timely application was based merely on the illness of the taxpayer's wife; and James E. Latimer, supra, where the taxpayer could not find a tenant. As to reasonable time, petitioner filed his application less than six months after the expiration of the statutory period and just over one month after the discussions with the revenue agent terminated. This stands in sharp contrast to the three and one-half 14 years involved in the Boyce case and the ten-month delay in Latimer. We think it is also important that this petitioner had actually reinvested, prior to December 31, 1970, about 60 percent of the proceeds he received, and *159 that by the end of 1971 more than the entire proceeds had been reinvested. Cf. Kolstad v. United States, 276 F. Supp. 757 (D.Mont., 1967), in which there was no reinvestment for six and one-half years. Accordingly, we conclude in these particular circumstances that the petitioner met both requirements of the regulations, and therefore the District Director abused his discretion in not granting the extension. See and compare Kean v. Commissioner, 469 F.2d 1183 (C.A. 9, 1972); Bookwalter v. Mayer, 345 F.2d 476 (C.A. 8, 1965). Sufficient mitigating circumstances have been shown by these petitioners. They are entitled to the benefit of the nonrecognition provisions of section 1033. Their gain on the involuntarily converted property need not be recognized in the taxable year 1969, but rather at the time the replacement property is disposed of. Decision will be entered for the petitioners. Footnotes
1. All statutory references herein are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. ↩