EDWARD L. FORD, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Ford v. Commissioner
Docket No. 2207-72.
United States Tax Court
T.C. Memo 1976-57; 1976 Tax Ct. Memo LEXIS 343; 35 T.C.M. (CCH) 253; T.C.M. (RIA) 760057; March 3, 1976, Filed Wallace E. Whitmore and David M. Bond, for the petitioner. Willard J. Frank, for the respondent. TIETJENS
MEMORANDUM OPINION TIETJENS, Judge: The Commissioner determined deficiencies in Federal income taxes of petitioner for the taxable years 1966 and 1968 in the amounts of $60,912.47 and $100,593.78, respectively. The issues to be decided are: (1) Whether petitioner realized *344 capital gain in the taxable years 1966 and 1968 upon receipt of compensation for property taken by eminent domain. (2) Whether the district director of internal revenue properly exercised his discretion in denying petitioner an extension of time to replace converted property under section 1.1033(a)-2(c)(3), Income Tax Regs., thereby preventing petitioner from utilizing the nonrecognition provision of section 1033, I.R.C. 1954. [1]
This case was fully stipulated pursuant to Rule 122, Tax Court Rules of Practice and Procedure. The facts which we deem necessary for decision will be referred to below. Petitioner Edward L. Ford resided at 10 Whittier Road, Wellesley, Massachusetts 02181, at the time the petition herein was filed. His Federal income tax returns for 1966 and 1968 were filed on the cash basis with the district director of internal revenue, Boston, Massachusetts. On or before October 18, 1962, petitioner was a tenant in common with Richard S. Robie of a parcel of real estate located at Soldier's Field Road and Western Ave., Brighton, Massachusetts. His basis in this piece *345 of property was $178,750. On October 18, 1962, the Massachusetts Turnpike Authority took this piece of property by eminent domain. The proceedings between petitioner and the Massachusetts Turnpike Authority regarding the taking were conducted under the provisions of the Law of November 6, 1963, ch. 793, sec. 2, Mass. Acts and Resolves 720, amending Law of September 21, 1959, ch. 626, sec. 3, Mass. Acts and Resolves 566, which was amended by Mass. Gen. Laws Ann., ch. 79, sec. 8A (1966). On November 10, 1966, pursuant to the provisions of this law, the Massachusetts Turnpike Authority made a "payment pro tanto" in the amount of $844,800 to petitioner and Robie. Petitioner's share of the "payment pro tanto" was $422,400, which petitioner deposited in his personal bank account at the Capital City Bank. Petitioner and Robie, as tenants in common, filed a petition in Suffolk Superior Court of the Commonwealth of Massachusetts for the assessment of damages resulting from the taking. The petition resulted in an award of $1,500,000 to them against which the prior "payment pro tanto" of November 1966 in the amount of $844,800 was applied. The balance of $655,200 was *346 paid on or about January 19, 1968. Petitioner's share of the additional award was $327,600. As of February 5, 1974, petitioner had not replaced the property, nor had he invested any money in such replacement property. On December 10, 1969, the petitioner applied to the district director of internal revenue, Boston, Massachusetts, for an extension of time to replace the converted property. Following a request for additional information from the district director, petitioner sent a letter describing the property; and listing the date of taking, the basis of the property, the amount and date of receipt of the pro tanto award, the amount and date of the final award, and the amount of interest received. On January 19, 1970, the district director denied petitioner's application for an extension of time to replace the converted property because the request had not been received within the time specified by section 1.1033(a)-2(c)(3), Income Tax Regs. Petitioner had offered no explanation in his application for filing after the time period specified in the statute. On October 21, 1971, petitioner reapplied for an extension of time to replace the converted property. He explained that he *347 had not filed his original request on time because of advice given by his advisor, John Fahey, a former employee of the Internal Revenue Service. In denying petitioner's reapplication, the district director stated that the advice of petitioner's advisor did not constitute "reasonable cause." John Fahey is petitioner's brother-in-law. Petitioner over the years (including the years in question) relied on him to prepare his income tax returns. John Fahey, who holds a treasury card to practice before the Internal Revenue Service, is neither a certified public accountant nor an attorney. In 1966 petitioner mentioned the pro tanto award to John Fahey. From the informal discussion that followed Fahey assumed that petitioner had not actually received the cash and that the total award was only $422,400. Believing that only half of this would ultimately be petitioner's, and knowing that petitioner and his cotenant planned to sue for a greater amount, he came to the conclusion that petitioner did not have to mention the pro tanto award on his 1966 return. Not until 1969 did petitioner provide Fahey with documentation concerning the award. Petitioner made several efforts to locate suitable *348 property for reinvesting the money he had received from the taking. However, he did not replace the converted property because he believed that the prices of available property were too high, that there would not be a sufficient return of his investment, and that available property was scarce. The Commissioner takes the position that petitioner realized capital gain in 1966 and 1968 upon the receipt of payments for his property under a claim of right without restriction as to their use. Petitioner asserts he realized no gain until 1968 because the pro tanto award was temporary, because it was not received under a claim of right, and because he could not replace the property without knowing how much he would ultimately receive. Petitioner received the pro tanto award in 1966. Accepting it meant that petitioner and his cotenant retained the right to seek additional damages but could also be required to return part of the award, with interest, if the amount exceeded the damages ultimately determined by a court. Petitioner and Robie did file a petition for assessment of additional damages, and in 1968 they received a greater total award against which the payment pro tanto was applied. *349 Petitioner denies that he received the pro tanto award under a claim of right; nonetheless, he deposited the award in his personal bank account, he had unrestricted use of it, and he initiated further proceedings to increase it. We cannot conclude other than that he received the award under a claim of right. See Marco S. Marinello Associates, Inc.,T.C. Memo. 1975-78, in which we held that where a taxpayer received a "payment pro tanto" pursuant to the identical Massachusetts statute at issue here, for realty taken by the Commonwealth of Massachusetts for highway purposes, it received said payment under a claim of right; North American Oil v. Burnet,286 U.S. 417 (1932) and Boyce v. United States,405 F.2d 526 (Ct. Cl. 1968). Petitioner also argues that the possibility of a refund rendered the payment temporary and because it was temporary no gain or loss could be determined until a final award was entered. The law is settled that when proceeds of a condemnation award are paid under a claim of right, and without restriction as to their use, gain is realized whenever the total receipts exceed the adjusted basis of the condemned *350 property even though at the time of receipt conditions exist which could require the taxpayer to return part or all of such earnings. Casalina Corp.,60 T.C. 694 (1973), affd. per curiam 511 F.2d 1162 (4th Cir. 1975); Scolari v. Commissioner,497 F.2d 962 (9th Cir. 1974), affirming per curiam a Memorandum Opinion of this Court; Town Park Hotel Corp. v. Commissioner,446 F.2d 878 (6th Cir. 1971), affirming per curiam a Memorandum Opinion of this Court; R. A. Stewart & Co.,57 T.C. 122 (1971); Conlorez Corp.,51 T.C. 467 (1968); Adolph K. Feinberg,45 T.C. 635 (1966), affd. 377 F.2d 21 (8th Cir. 1967); Marco S. Marinello Associates, Inc.,supra.
Petitioner attempts to distinguish many of the above cited cases by claiming that he had only temporary use of the money and that no gain or loss could be determined until final judgment. He also relies on minor factual details to assert inapplicability. Unfortunately, petitioner confuses his legal assertions (i.e., temporary use of the money) for facts and consequently makes distinctions without *351 basis. In the process, he ignores the established criteria which determines when gains from involuntary conversions become taxable. Petitioner's final argument under this issue is that since he did not know how much he would have to spend on replacement property which, he asserts, prevented him from replacing it in 1966, he consequently did not realize gain until 1968. We also find this argument without merit. As we have already pointed out, gain is realized when the total receipts exceed the adjusted basis of the condemned property even though at the time of receipt conditions exist which could require the taxpayer to return part or all of such earnings. Petitioner in conclusion argues that, if we determine that gain was realized by virtue of the 1966 payment, he is entitled to defer recognition of that gain under the regulations issued pursuant to section 1033. At the time of the taking, section 1033 allowed petitioner one year [2] after the close of the taxable year in which any part of the gain was realized to purchase replacement property. Such a purchase within the proscribed time period would have postponed recognition of his gain. The parties have stipulated that as of *352 February 5, 1974, petitioner had not purchased replacement property. Nonetheless, petitioner argues that the district director abused his discretion in refusing to grant his requests for an extension of time in which to replace the converted property. In the regulations (section 1.1033(a)-2, Income Tax Regs.) issued pursuant to section 1033(a)(3)(B)(ii), the Commissioner requires that applications for extension be made within the same time period otherwise prescribed for the replacement of converted property, or later if the applicant satisfies the district director that (1) lateness was due to a reasonable cause and (2) the application was filed within a reasonable time after expiration of the required period. Petitioner realized gain in 1966; therefore, he had until the end of 1967 to comply with the requirements of section 1033 and the regulations issued thereunder in order to avoid recognition of his gain. Offering no explanation for his late application, he filed a request for an extension in December 1969. The district director denied the request because *353 it was late. Approximately 22 months later, on October 21, 1971, petitioner reapplied for an extension in which to replace the converted property. Petitioner explained that he had filed the original request late because of advice given by his advisor, John Fahey, a former employee of the Internal Revenue Service. The district director again denied the request. From the above stated facts, we conclude that petitioner met neither one of the prerequisites established by the regulations for the consideration of late applications for extension of time in which to replace property taken by eminent domain. Petitioner's original application was filed 23 months late with no explanation for its lateness. Compare James E. Latimer,55 T.C. 515 (1970), in which we held 10 months' lateness unreasonable and Theron M. Lemly,T.C. Memo. 1973-147, in which we found 6 months' delay reasonable where taxpayer's certified public accountant had died but in "sharp contrast" to the 10-month delay in Latimer.
Not until the reapplication, on October 21, 1971, did petitioner offer any explanation for his late application. Then he said he had relied on the advice of an *354 advisor. Petitioner looks to Rev. Rul. 72-27, 1972-1 C.B. 226, to support this reliance; however, we are of the opinion that this ruling does not help petitioner. There taxpayer's reliance in good faith on the advice of a reputable accountant and attorney, both of whom were experienced in Federal tax matters and to whom all relevant information had been furnished, was considered reasonable cause for the lateness of an application for extension filed shortly after expiration of the specified replacement period and immediately upon learning of the error. First, we cannot conclude that petitioner relied in good faith on the advice of John Fahey, regardless of any determination we might make about his tax expertise. He neither supplied his advisor with documentation nor gave him enough information upon which Fahey could give adequate advice. Fahey stated that he assumed petitioner had not received the funds in 1966 and in addition believed the "payment pro tanto" was half its actual amount. Second, petitioner did not file his application for an extension shortly after expiration of the specified replacement period nor did he file his reapplication immediately *355 upon learning of his error (if we assume that the district director's denial was his first notification of his mistake). See Casalina Corp.,supra,Marco S. Marinello Associates, Inc.,supra.Therefore, we conclude that the district director did not abuse his discretion in denying petitioner's applications for an extension. Decision will be entered for the respondent.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 unless otherwise stated.↩
2. Extended to two years for dispositions occurring after December 30, 1969. Tax Reform Act of 1969, sec. 915(a).↩