ESTATE OF SHELLA B. GARDNER, DECEASED, OMER MACY, ADMINISTRATOR, WITH WILL ANNEXED, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Gardner v. Commissioner
Docket No. 28332-83.
United States Tax Court
T.C. Memo 1986-380; 1986 Tax Ct. Memo LEXIS 224; 52 T.C.M. (CCH) 202; T.C.M. (RIA) 86380; August 18, 1986. *224 P's attorney requested an extension to file P's estate tax return 11 days after the due date of the return. After the return was filed R rejected the request for extension. Held, even if R abused his discretion in failing to investigate and objectively review the explanations contained in petitioner's extension request, based on the record, no good and sufficient cause existed for an extension of time to file, and accordingly the estate tax return cannot be considered as having been timely filed. Held,further, the estate does not qualify for section 2032A "special use" valuation. Held,further, the addition to tax under section 6651(a) imposed. H. Kent Heller, for the petitioner. Michael Bitner, for the respondent. DRENNEN
MEMORANDUM FINDINGS OF FACT AND OPINION DRENNEN, judge: This case was assigned to and heard by Special Trial Judge Peter J. Panuthos pursuant to the provisions of section 7456(d) [1] and Rule 180, et seq. [2] *225 After review of the record, we agree with and adopt his opinion which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE PANUTHOS, Special Trial Judge: Respondent determined a deficiency in petitioner's Federal estate tax of $113,635.73 and an addition to tax under section 6651(a) of $5,681.79. Concessions having been made by the parties, the principle issue remaining for decision is whether for estate tax purposes, petitioner may value certain qualifying property at its "special use" value under section 2032A. This in turn depends on: (1) whether respondent abused his discretion by the manner in which he denied decedent's estate an extension of time within which to file its Federal estate tax return, [3] (2) if so, whether we may substitute our judgment for respondent's in order to determine whether good and sufficient cause existed to grant an extension, and (3) whether the addition to tax under section 6651(a) should apply. Some of the facts have been stipulated and are found accordingly. FINDINGS OF FACT Shella Gardner, decedent, died on November 14, 1979, while a domiciliary of the State of Illinois *226 and a resident of Matoon, Illinois; her estate is being administered in Illinois. T. Aleen Macy, the decedent's daughter, was executrix of the estate; she died on February 11, 1985. Petitioner is the Estate of Shella Gardner, Deceased, Omer Macy, Administrator with Will Annexed. [4]
At the time of her death, decedent owned in fee simple absolute, three tracts of property (including two farms) located in Coles County, Illinois. Her will devised her real property to her daughter, T. Aleen Macy. On the day of the decedent's death, November 14, 1979, the executrix and her husband Omer Macy met in Mattoon, Illinois, with attorney Harlan Heller of the law firm Harlan Heller, Ltd. The purpose *227 of the meeting was to provide Harlan Heller with a list of the assets of the estate. Harlan Heller was the only attorney present from the law firm of Harlan Heller, Ltd.
On November 19, 1979, the executrix and her husband met again with Harlan Heller and provided him with information pertinent to the estate's possible election of section 2032A "special use" valuation. The only other attorney present at this meeting was H. Kent Heller, a member of the law firm of Harlan Heller Ltd. He remained at the meeting for only a short time. H. Kent Heller worked at the Aurora, Illinois office of the law firm; Aurora is 185 miles from Mattoon. The Macys knew that H. Kent Heller worked at the Aurora office and not the Mattoon office. The executrix and her husband, Omer Macy, had been married about 46 years when decedent died. During the course of their marriage Omer Macy made most of the major business decisions and generally tended to the important family matters. The executrix paid the family bills but was not involved in family business affairs to any great extent. This approach toward business matters carried over to the macys' approach to the administration of decedent's estate. Most *228 inquiries about the estate from the Macys to Heller were made by Omer Macy despite the fact that his wife was the executrix. The Macys had very little to do with administration of the estate or the preparation of the estate tax return. The Macys' only involvement with the administration of the estate was attending two meetings with the Heller law firm, a letter from Omer Macy to Harlan Heller to correct errors contained in the real estate appraisal, and payment by the executrix, through her husband, to the appraisers. Neither the executrix nor her husband inquired as to the preparation or due date of decedent's estate tax return. The executrix knew an estate tax return had to be filed and that she must sign the return. Nevertheless, she did nothing personally to ensure that the return would be filed on time other than to employ the law firm of Harlan Heller Ltd. to handle the legal affairs of the estate. After Harlan Heller met with the Macys concerning decedent's estate, he did not immediately commence preparation of the return. Rather his initial involvement in the case was the collection of information. In the course of his practice he has prepared two or three Federal estate *229 tax returns per year. At the time the Macys employed Heller's firm, however, the estate and gift tax work was handled by Alan Spaniol, an associate attorney at the firm. Alan Spaniol was given primary responsibility for the preparation of the estate tax return. Because of the small size of Heller's firm, case assignments were generally made orally rather than with a written memorandum. Consequently, no written memorandum or record assigning the case to Alan Spaniol exists. On November 22, 1979, eight days after the death of decedent, and three days after the November 19th meeting between the Macys and Heller, Alan Spaniol died in an airplane crash. He never met with the executrix or her husband in regard to the preparation of the Federal estate tax return. The Macys knew that the Heller law firm consisted of more than one attorney; however, they did not know which other attorney or attorneys may have worked on decedent's estate. The executrix was unaware of Spaniol's assignment to the case. During the years 1979 and 1980, the Heller law firm used a statute card system in an attempt to ensure that no deadlines in cases being handled by the firm were missed. This system operated *230 by indicating on a 3" X 5" index card date or dates on which any action had to be taken with respect to the case for which the card had been prepared. These cards were placed in a tickler system in such a fashion that a statute card was pulled from the system 30 days in advance, one week in advance, and on the day of the deadline indicated. After Spaniol's death, Harlan Heller and his office manager, Nancy Siebert, went through the papers and files in Spaniol's office to determine the cases assigned to him and the status thereof. The process of sorting through his office lasted about one month. Neither Harlan Heller nor the office manager ever discovered that a statute card indicating the due date of decedent's Federal estate tax return had not been prepared for decedent's estate. [5]
The Federal estate tax return was due on August 14, 1980. On August 25, 1980, H. Kent Heller, as attorney for decedent's estate, filed an Application for Extension of Time to File U.S. Estate Tax Return and/or Pay Estate Tax (Form 4768) to September 1, 1980 with the Office of the *231 Internal Revenue Service at Springfield, Illinois. Decedent's estate tax return (Form 706) was signed by the executrix and Harlan Heller on August 28, 1980, was postmarked August 30, 1980, and was received in the Internal Revenue Service district office on September 2, 1980. On decedent's return, an election was made to include decedent's interest in the Coles County real property pursuant to its section 2032A "special use" value. The grounds asserted in the application for extension were: (1) the executrix had relied on experienced counsel for the preparation and filing of the estate tax return; (2) counsel's office relied on a statute card system for notification of deadlines and in this case no statute card had been prepared; and (3) at the time of the deadline, counsel was engaged in three successive trials in Federal District Court and a fourth following the deadline. On September 11, 1980, a delegate of respondent at the Kansas City Service Center indicated that the application for extension was not approved because it was not "timely filed." No consideration was given to counsel's reasons for requesting an extension; the delegate simply denied the request because it was submitted *232 after the due date of the return. On October 9, 1980, the executrix, by her attorney, H. Kent Heller, filed a written protest with the Internal Revenue Office in Springfield, Illinois, and requested a hearing with the Internal Revenue Appeals Office in St. Louis, Missouri to reconsider the request for an extension. Upon receipt of the protest letter, a member of the staff of the Internal Revenue Service in St. Louis contacted H. Kent Heller to inform him that the appeals office would not consider the matter until the district director conducted his examination of the estate tax return. In 1981, an estate tax attorney with the Springfield office commenced an examination of decedent's estate tax return. Shortly after he began work on the return, the examiner talked with H. Kent Heller about the reasons for the late filing. At this time the law firm first asserted that Alan Spaniol had been working on the case and that his death also caused the delay in filing. As a result of his conversation with H. Kent Heller, the examiner sought technical advice from the Internal Revenue Service national office, as to whether a reasonable cause exception exists to excuse untimely filing thus allowing *233 the estate of qualify for "special use" valuation and whether the explanation offered by decedent's estate for the late filing constituted reasonable cause. The national office informed the examiner that no reasonable cause exception applies with respect to section 2032A and that whether or not cause existed for failure to file a timely application for extension is a question of fact which is solely within the discretion of the district director. After receipt of this advice, the examiner concluded his examination of the estate and proposed that the election which had been made on the estate tax return for the "special use" valuation be denied because of the late filing of the return. [6] He also proposed that an addition to tax pursuant to section 6651(a)(1) be determined against the estate. Upon her receipt of the 30-day letter, the executrix, through H. Kent Heller, filed a written protest with the St. Louis Appeals Office. In the protest letter, Heller reiterated his previous explanations for the late filing of the return. Included in that protest were not only the reasons originally *234 offered when the application for extension was filed but also an additional reason, the death of attorney Spaniol. The protest was assigned to an attorney working at the St. Louis Appeals office. The appeals officer, after a review of the matter, sent the file back to the district office in Springfield with instructions that the factual circumstances surrounding the extension request be investigated. In his appeals transmittal memorandum he indicated that extenuating circumstances for the late filing may exist. While he did not assume the allegations to be true, he believed they had not been given proper consideration. As a result of the appeals officer's memorandum, on April 19, 1983, the examiner met with the executrix, her husband, and attorney H. Kent Heller to talk about the allegations of extenuating circumstances surrounding the filing of the estate tax return. At the meeting the examiner made no attempt to ascertain whether the allegations were true; rather, he assumed that they were true. On July 5, 1983, respondent timely mailed a notice of deficiency to petitioner determining a deficiency in estate tax in the amount of $113,635.73 and an addition to tax in the amount *235 of $5,681.79. Respondent determined that decedent's interest in the real property could not be included in decedent's estate at its section 2032A "special use" value because the election had not been made on a timely filed estate tax return. Accordingly, respondent determined that the real property had to be included in decedent's estate at its fair market value as indicated on the tax return; that value was $450,650.00. OPINION Under section 2032A a decedent's estate may elect to value certain qualifying property for Federal estate tax purposes based upon its actual ("special") family farm or small business use, rather than upon its highest and best use. The purpose of section 2032A is to encourage the continuation of farming or other closely held business activities. H. Rept. 94-1380 (1976), 1976-3 C.B. (Vol.3) 755, 756; S. Rept. 94-938 (Part 2) (1976), 1976-3 C.B. (Vol.3) 657. In order to qualify for the "special use" value, these qualifications, among others, must be met: (1) at the time of death, the decedent must have been a U.S. citizen; (2) the property for which the special use valuation is sought must be located within the United States; (3) the property must pass to *236 a member of the decedent's family who qualifies under section 2032A; and (4) the property must have been used at the time of the decedent's death for a qualified purpose under section 2032A. See Estate of Sherrod v. Commissioner,82 T.C. 523, 532 (1984); Estate of Geiger v. Commissioner,80 T.C. 484, 488 (1983).At the time of decendent's death, section 2032A(d)(1) provided as follows: Election.-The election under this section shall be made not later than the time prescribed by section 6075(a) for filing the return of tax imposed by section 2001(including extensions thereof), and shall be made in such manner as the Secretary shall be regulations prescribe. * * * [Emphasis added.] The parties agree that but for the late filing of the return the estate qualifies for the special use valuation. [7] *237 Petitioner concedes that to be effective the election must have been made on a timely filed return, "including extensions thereof." Thus, the starting point in this case is determining whether respondent abused his discretion in denying petitioner's request for an extension of time to file the estate tax return. Petitioner concedes that the estate is liable for the deficiency if we find that the Commissioner was justified in not granting the request for an extension. [8]
*238 Under section 6081(a), respondent "may grant a reasonable extension of time for filing any return * * * required to be filed by this title or regulations." (Emphasis added.) In the case of an estate tax return there is no date by which an extension request must be filed. The regulations under section 6081 imply that a request for extension of time may be filed after the due date of the estate tax return. Section 20.6081-1(b), Estate Tax Regs. [9]Estate of Gardner v. Commissioner,supra at 993. Decedent's estate tax return was due August 14, 1980, which was 9 months after her death. Section 6075(a). [10] The extension request was filed August 25, 1980, which was 11 days after decedent's estate tax return was due. Petitioner requested that the due date *239 for filing the return be extended until September 1, 1980. The return was actually received by the Internal Revenue Service on September 2, 1980.Had the extension request been granted, the return would have been treated as timely filed. Section 7502(a). We have previously held that respondent's exercise of discretion to grant or deny an extension of time under section 6081 is reviewable by this Court. Estate of Gardner v. Commissioner,supra. Given the discussion in our opinion in Gardner we will not repeat here the reasons why we have authority to review respondent's discretionary decisions under section 6081. Whether or not respondent or his agent has abused his discretion is a question of fact. Ballentine Motor Co. v. Commissioner,321 F.2d 796, 800 (4th Cir. 1963), affg. 39 T.C. 348 (1962); Hospital Corp. of America v. Commissioner,81 T.C. 520, 594 (1983); Foster v. Commissioner,80 T.C. 34, 160, 178 (1983), affd. in part and revd. in part 756 F.2d 1430 (9th Cir. 1985). Petitioner bears the heavy burden of proving *240 that respondent's actions were plainly arbitrary. Kolstad v. United States,276 F. Supp. 757, 761 (D. Mont. 1967). Inextricably connected with the authority to determine if respondent abused his discretion is the question of whether the estate has shown good and sufficient cause for the extension request. [11] *241 While the record in this case could well lead us to the conclusion that the Commissioner did not adequately review the facts surrounding the request and, in fact, acted arbitrarily in denying the request, [12] we conclude that the estate has nevertheless not shown good and sufficient cause for granting the request. As a result of this conclusion, we assume for purposes of this case that the Commissioner abused his discretion in the manner in which he denied the extension. Accordingly, we review the circumstances which lead us to the conclusion that the estate has not shown good and sufficient cause for granting the request. [13] *242 The regulations under section 6081 do not set forth what standard the Commissioner should use to determine the circumstances that constitute "good and sufficient cause" for granting an extension. Section 20.6081-1(a), Estate Tax Regs. The regulations under section 6651, on the other hand, require that in order for a taxpayer to avoid the addition to tax for delinquency he must make a showing of reasonable cause. Section 301.6651-1(c), Proced. and Admin. Regs. Nothing in the legislative history of section 6081 or its regulations sets forth a definition of good and sufficient cause or any indication that it is a greater or lesser standard than reasonable cause. Nevertheless, as we *243 stated in Estate of Gardner v. Commissioner,82 T.C. at 997-998, "[t]he standards in section 20.6081-1(a), Estate Tax Regs., are not unlike those we apply in determining the applicability of the section 6651 addition to tax." The first reason asserted for the extension by the firm was the executor's reliance on experienced counsel. As the Supreme Court held in United States v. Boyle,469 U.S. 241, 252 (1985)a taxpayer's reliance on an agent, such as a tax attorney or an accountant, is not reasonable cause for late filing under section 6651(a)(1). [14] Nor do we find it to be good and sufficient cause for granting an extension to file an estate tax return in circumstances such as these. The second reason asserted for the extension was that the law firm's statute card system for notification of deadlines had failed. Petitioner later added that this failure probably resulted from the death of attorney Spaniol to whom the case had been assigned. We note that the Macys met with Harlan Heller on November 14, 1979 and with Harlan and Kent Heller on November 19, 1979. Spanoil died on November 22, 1979, almost nine *244 months before the due date of decedent's estate tax return. While Spaniol may have had primary responsibility at the firm for the case while he was living, he only had this responsibility for eight days at the most. The Heller law firm undertook responsibility for preparing the return on time; it failed in that responsibility. Harlan Heller had a few instances to ascertain the due date of the return: (1) in November of 1979, when he was sorting through Spaniol's work on the case, (2) in February of 1980, when Omer Macy contacted Heller about a mistake in the appraisal, and (3) in April of 1980 in corresponding with respect to the section 2032A valuation. Heller's own carelessness about the due date added to the return being filed late. Finally, the fact that Harlan Heller may have been engaged in four successive Federal court trials (an allegation concerning which no evidence was ever offered) is hardly sufficient reason for granting an extension of time to file where the extension request is made after the due date of the return. The above reasons asserted by petitioner relate to the reasons for the attorney's failure to timely file a request for an extension of time to file the *245 return and do not provide petitioner with cause for not seeing to it that the return was timely filed. We find that based on the record, no good and sufficient cause existed to grant petitioner's extension request. Petitioner conceded that if we found that respondent did not abuse his discretion, then under United States v. Boyle,469 U.S. at 241, it would be liable for the addition to tax under section 6651(a). We understand petitioner to concede liability for the section 6651(a) addition to tax if we find no good and sufficient cause existed to grant the extension request. Nevertheless, since petitioner did not phrase the concession in those terms, we find that, under Boyle, petitioner is liable for the section 6651(a) addition to tax. The situation is clearly controlled by Boyle.
The executrix' duty to file a timely estate tax return is non-delegable. United States v. Boyle,supra,469 U.S. at 249. Reliance on an attorney to tell a taxpayer when the return is due does not constitute reasonable cause for late filing. United States v. Boyle,supra.The executrix here knew an estate tax return had to be filed and it was her non-delegable duty to ensure that the return was timely *246 filed. [15]United States v. Boyle,supra;Estate of Brandon v. Commissioner,86 T.C. 326. Therefore, respondent's determination of this addition to tax is sustained. Due to concessions having been made by the parties on other issues, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. ↩
2. All Rule references are to the Tax Court Rules of Practice and Procedure.
3. See Estate of Gardner v. Commissioner,82 T.C. 989 (1984), in which we discuss our authority to review respondent's exercise of discretion under section 6081↩.
4. On March 25, 1985, the Court granted the parties' Joint Motion to Substitute Parties and Amend Caption based on the death of the executrix, T. Aleen Macy, following an order issued February 19, 1985, by the Circuit Court for the Fifth Judicial Circuit of Illinois, Coles County, appointing Omer Macy as Administrator with Will Annexed for the Estate of Shella Gardner, Deceased. We will continue to refer to T. Aleen Macy as the executrix since she held that position during all relevant times herein.↩
5. There is no indication in the record whether any papers or files were found relating to the estate or estate tax return.↩
6. The other proposals made on the Report of Estate Tax Examination are not relevant to this discussion.↩
7. The Economic Recovery Tax Act of 1981 amended section 2032A(d)(1) to provide that the election can be made on the first estate tax return filed, whether or not the return is timely filed. Section 421(j)(3), Pub. L. 97-34, 95 Stat. 172, 312-313. However, this amendment applies only to the estates of decedents dying after Dec. 31, 1981, section 421(k)(1), Pub. L. 97-34, 95 Stat. 313; consequently, these changes do not apply to this case.
8. Even if we were to find reasonable cause for the late filing, section 2032A as it relates to this case (decedents who died prior to January 1, 1982) applies only if the election is made on a timely filed return. Estate of Young v. Commissioner,T.C. Memo. 1983-686; Estate of Boyd v. Commissioner,T.C. Memo. 1983-316. Accordingly, the reasonable cause test under United States v. Boyle,469 U.S. 241 (1985) does not apply. See also Estate of Gardner v. Commissioner,82 T.C. 989, 993 (1984) and cases cited therein construing substantially identical language in section 2032(c) involving the election of an alternate valuation date; Estate of McCoy v. Commissioner,T.C. Memo. 1985-509↩.
9. Section 20.6081-1(b), Estate Tax Regs., provides that an extension request should be made before the expiration of time within which the return must otherwise be filed and failure to do so may indicate negligence and constitute sufficient cause for denial.It should, where possible, be made sufficiently early to permit the internal revenue officer to consider the matter and reply before what would otherwise be the due date of the return.↩
10. Sections 6075(a) requires that "returns made under section 6018(a)↩ (relating to estate taxes) shall be filed within 9 months after the date of the decedent's death."
11. Section 20.6081-1, Estate Tax Regs., provides: (a) In case it is impossible or impracticable for the executor to file a reasonably complete return within 9 months * * * from the date of death, the district director or the director of a service center may, upon a showing of good and sufficient cause, grant a reasonable extension of time for filing the return required by section 6018↩. 12. The grounds set forth in the original extension request were not considered; rather, the request was denied simply because it was late. The estate tax examiner failed to verify the allegations in the extension request even though the case had been returned by an appeals officer for that purpose. While we do not approve the treatment given this request by respondent's agents, abuse to discretion is not the critical issue in this case. In this regard, petitioner's motion to reopen the record was filed on August 13, 1986. Petitioner attempted to place into the record an affidavit of a former employee of respondent. The allegations in the affidavit could support the argument that respondent acted arbitrarily in denying the extension request. Since the question of abuse of discretion is not the critical issue we have denied petitioner's motion.↩
13. We are not powerless to change the finding of the respondent nor must we follow all decisions made by him. Lemly v. Commissioner,T.C. Memo. 1973-147. In Lemly we found that the district director abused his discretion in denying the taxpayer an extension of time within which to reinvest the proceeds of a condemnation action in order to take advantage of the nonrecognition provisions of section 1033. We held that the extension request, which was filed five and one-half months after the expiration of the statutory period, was filed within a reasonable period. In addition, we ruled that the death of the taxpayer's accountant, who his trusted tax advisor, constituted reasonable cause for the untimely election.
14. See our discussion infra as it relates to the section 6651(a)(1)↩ addition.
15. The executrix met with representatives of the law firm on more than one occasion well in advance of the due date of the return for the specific purpose of preparation of the return.↩